643 So.2d 1037 (1994)
In re CODE OF JUDICIAL CONDUCT.
No. 81685.
Supreme Court of Florida.
September 29, 1994.
Jere Tolton, Past-Chair, Code Revision Project and Committee on Standards of Conduct Governing Judges, Shalimar; Nath C. Doughtie, Chair, Code Revision Project, Committee on Standards of Conduct Governing Judges, Gainesville, Thomas S. Edwards, Jr. of Peek & Cobb, P.A., Jacksonville, on behalf of the Supreme Court Committee on Standards of Conduct Governing Judges; and Erwin Fleet, Chair, Retired Judges' Section of the Circuit Judges' Conference, Ft. Walton Beach, for petitioner.
William F. Blews, President, St. Petersburg, and John F. Harkness, Jr., Executive Director, Tallahassee, on behalf of the Board of Governors of The Florida Bar; Bill Kasper, Executive Director, Gotha, on behalf of Child; Jimmy Hatcher, a Florida citizen, Bristol, Beverley Comstock, pro se, Antonio Capestany, a Florida citizen, N.M.B., Robert J. Bertrand, pro se, Emanuel N. Feigin, pro se, Cheryl A. Tesher, pro se, Mark Zimmerman, a Florida citizen, St. Petersburg, Heinz Dinter, Ph.D., pro se, Stephen Lane, pro se, Dr. David E. Flinchbaugh, pro se, William D. Palmer, pro se, and other interested individual lawyers and members of the public, responding with written comments.
OVERTON, Justice.
We have for adoption a new Code of Judicial Conduct to replace the present Code of Judicial Conduct adopted in In re The Florida Bar  Code of Judicial Conduct, 281 So.2d 21 (Fla. 1973), and its subsequent amendments[1]. In August of 1990 the American Bar Association adopted a new Model Code of Judicial Conduct. As a result of that action, Chief Justice Leander J. Shaw requested the Committee on Standards of Conduct Governing Judges to consider a revision of our code of conduct in a manner consistent with the ABA Model Code. The Standards *1038 of Conduct Committee was instructed to submit a report to the Court containing its recommendations for the adoption of new canons of judicial ethics to reflect present day concerns and responsibilities of Florida judges. The Standards Committee was composed of the following members:

The Honorable Jere Tolton, Chair

The Honorable Stephen Rushing, Vice-Chair

The Honorable Harvey L. Goldstein, Immediate Past Chair

The Honorable Anne C. Booth

Thomas L. Clarke, Jr., Esquire

The Honorable John W. Dell

The Honorable Nath C. Doughtie

Thomas S. Edwards, Jr., Esquire

The Honorable Joseph P. Farina

The Honorable Richard H. Frank

The Honorable Oliver L. Green, Jr.

The Honorable Charles Kahn, Jr.

The Honorable David Patterson

The Honorable Carole Y. Taylor
The committee members are to be commended for their extensive and diligent efforts in presenting a new code to the Court. Following the submission of the report, we had the proposed code published, requested written comments, and allowed oral argument for those who made written comments. Comments were filed and presentations made by the Board of Governors of The Florida Bar and individual lawyers as well as individual members of the public.
A code of conduct for judges is not something new. In the middle 1600s, Sir Matthew Hale of England set down eighteen rules for his judicial guidance.[2] The first American canons of judicial ethics were prepared by a committee headed by William Howard Taft. These canons were adopted by the American Bar Association in 1924 and thereafter adopted and made applicable to the federal courts and most state courts. The Florida Supreme Court approved the canons for use in this state in 1941. In 1972 the American Bar Association totally revised the original canons and created "The Code of Judicial Conduct." This Court substantially adopted that new code in 1973. See In re The Florida Bar  Code of Judicial Conduct. The American Bar Association revised the Code of Judicial Conduct in 1990 and produced the "Model Code of Judicial Conduct *1039 1990." The proposed new Florida Code of Judicial Conduct substantially incorporates the provisions of this new ABA Model Code of Judicial Conduct.
There were four principal issues raised in the comments and at oral arguments. The first suggested that we should change "should" to "shall" in a number of the proposed canons, particularly Section 3D(2). We have agreed to that request and made the suggested change. The second issue concerns the portion of the Applications section in which traffic magistrates are prohibited from practicing in the court in which the magistrate serves. Several letters have expressed the concern that this restriction would limit the number of qualified people available for those positions. We reject this objection and find that the prohibition contained in the proposed code should remain as written. The third issue concerns the propriety of a senior judge acting as both a mediator and an assigned senior judge. We approve the Standards Committee's recommendation, but have modified Section B of the application section and its commentary to more fully explain when and under what circumstances a senior judge may be a mediator. We will continue to monitor the application of this provision. The fourth issue concerns restrictive provisions in Canon 7 regarding the conduct of individuals who are seeking judicial positions before nominating commissions. The Florida Bar Board of Governors asserts that certain provisions of proposed canon 7 will have the effect of reducing the flow of valuable and relevant information to the nominating commissions and has asked that we reject these provisions. We find that the Board of Governors' position has merit and, consequently, have deleted these provisions from the new code.
The Standards of Conduct Committee has supplemented its initial petition and has directed our attention to an asserted conflict between the proposed Canon 2B and recent decisions of this Court. Specifically, the Committee has questioned whether and under what circumstances a judge may write a character reference letter and under what circumstances a judge may use official court letterhead. The confusion over these issues was caused in part by our approval of the language used in the stipulation of fact and discipline in In re Judge Abel, 632 So.2d 600 (Fla. 1994). Although we believe that the proposed Canon 2B sufficiently addresses the issues raised by the Committee, we have added the following underscored language to the commentary regarding judicial letterhead: "Similarly, judicial letterhead must not be used for conducting a judge's personal business, although a judge may use judicial letterhead to write character reference letters when such letters are otherwise permitted under this Code." We note that, in some instances, bar admission authorities and law schools solicit recommendations from judges. If it is appropriate to send such a letter or to file a report, we find that a judge may use stationery that reflects the judge's office. We stress, however, that judicial letterhead must not be used for personal business. We find that the Committee on Standards of Judicial Conduct opinions 75-18, 75-22, 77-17, 79-3, 88-19, 92-2, 92-30, and 93-1 are proper interpretations of the Canon.
We recognize that, as noted in the commentary to Canon 2C, the issue of whether an organization practices invidious discrimination under Canon 2C is a complex issue to which judges must be sensitive. We believe that the commentary to this Canon gives appropriate guidance as to what types of extra-judicial activities will comply with this Code provision. In addition, we have added the following language to the proposed commentary to Canon 2C: "This Canon is not intended to prohibit membership in religious and ethnic clubs, such as Knights of Columbus, Masons, B'nai B'rith, and Sons of Italy; civic organizations, such as Rotary, Kiwanis, and The Junior League; young people's organizations, such as Boy Scouts, Girl Scouts, Boy's Clubs, and Girl's Clubs; and charitable organizations, such as United Way and Red Cross."
We have accepted the suggestion that proposed Canon 3B(5) should be amended to include the following language: "This section does not preclude the consideration of race, sex, religion, national origin, disability, age, sexual orientation, socioeconomic status, or other similar factors when they are issues in *1040 the proceeding." This modification will bring this section into conformity with the language of section (6) of Canon 3B.
The new Code of Judicial Conduct we have approved is substantially the same as the Model Code of Judicial Conduct adopted by the ABA in 1990.[3] In considering this new code we have also examined the Code of Conduct for United States Judges adopted by the federal Judicial Conference in 1992 and have incorporated some of its modifications to the Model Code. We note that the new Florida code places most of the provisions of canon 4 of the Model Code in three separate canons: 4, 5 and 6. We find that the Standards Of Conduct Committee's separation of canon 4 into three canons is appropriate, both for understanding the application of the canon and for addressing unique problems pertaining to the Florida judiciary and its financial reporting requirements.
Finally, we emphasize that the Standards of Conduct and Technology Governing Electronic Media and Still Photography Coverage of Judicial Proceedings, Canon 3A(7) and Commentary, are not repealed, but have been moved to the Florida Rules of Judicial Administration. See Fla.R.Jud.Admin. 2.170.
Accordingly, the appended new Code of Judicial Conduct is hereby adopted in place of the present Code of Judicial Conduct, and the new Code shall govern the conduct of all justices and judges, and persons seeking those positions, effective January 1, 1995.
It is so ordered.
GRIMES, C.J., and SHAW, KOGAN, HARDING, WELLS and ANSTEAD, JJ., concur.

APPENDIX

CODE OF JUDICIAL CONDUCT

Table of Contents
Preamble
Definitions
Canons
1. A Judge Shall Uphold the Integrity and Independence of the Judiciary.
2. A Judge Shall Avoid Impropriety and the Appearance of Impropriety in All of the Judge's Activities.
3. A Judge Shall Perform the Duties of Judicial Office Impartially and Diligently.
4. A Judge May Engage in Activities to Improve the Law, the Legal System, and the Administration of Justice.
5. A Judge Shall Regulate Extrajudicial Activities to Minimize the Risk of Conflict with Judicial Duties.
A. Extrajudicial Activities in General.
B. Avocational Activities.
C. Governmental, Civic or Charitable Activities.
D. Financial Activities.
E. Fiduciary Activities.
F. Service as Arbitrator or Mediator.
G. Practice of Law.
6. Fiscal Matters of a Judge Shall Be Conducted in a Manner That Does Not Give the Appearance of Influence or Impropriety; A Judge Shall Regularly File Public Reports as Required by Article II, Section 8, of the Constitution of Florida, and Shall Publicly Report Gifts; Additional Financial Information Shall Be Filed With the Judicial Qualifications Commission to Ensure Full Financial Disclosure.
A. Compensation for Quasi-Judicial and Extrajudicial Services and Reimbursement of Expenses.
B. Public Financial Reporting.
C. Confidential Financial Reporting to the Judicial Qualifications Commission.
D. Limitation of Disclosure.
*1041 7. A Judge Or Candidate for Judicial Office Shall Refrain From Inappropriate Political Activity.
A. All Judges and Candidates.
B. Candidates Seeking Appointment to Judicial or Other Governmental Office.
C. Judges and Candidates Subject to Public Election.
D. Incumbent Judges.
E. Applicability.
Application of the Code of Judicial Conduct.
A. Traffic Magistrate.
B. Retired/Senior Judge.
Effective Date of Compliance.

Preamble
Our legal system is based on the principle that an independent, fair and competent judiciary will interpret and apply the laws that govern us. The role of the judiciary is central to American concepts of justice and the rule of law. Intrinsic to all sections of this Code are the precepts that judges, individually and collectively, must respect and honor the judicial office as a public trust and strive to enhance and maintain confidence in our legal system. The judge is an arbiter of facts and law for the resolution of disputes and a highly visible symbol of government under the rule of law.
The Code of Judicial Conduct establishes standards for ethical conduct of judges. It consists of broad statements called Canons, specific rules set forth in Sections under each Canon, a Definitions Section, an Application Section and Commentary. The text of the Canons and the Sections, including the Definitions and Application Sections, is authoritative. The Commentary, by explanation and example, provides guidance with respect to the purpose and meaning of the Canons and Sections. The Commentary is not intended as a statement of additional rules. When the text uses "shall" or "shall not," it is intended to impose binding obligations the violation of which, if proven, can result in disciplinary action. When "should" or "should not" is used, the text is intended as hortatory and as a statement of what is or is not appropriate conduct but not as a binding rule under which a judge may be disciplined. When "may" is used, it denotes permissible discretion or, depending on the context, it refers to action that is not covered by specific proscriptions.
The Canons and Sections are rules of reason. They should be applied consistent with constitutional requirements, statutes, other court rules and decisional law and in the context of all relevant circumstances. The Code is not to be construed to impinge on the essential independence of judges in making judicial decisions.
The Code is designed to provide guidance to judges and candidates for judicial office and to provide a structure for regulating conduct through disciplinary agencies. It is not designed or intended as a basis for civil liability or criminal prosecution. Furthermore, the purpose of the Code would be subverted if the Code were invoked by lawyers for mere tactical advantage in a proceeding.
The text of the Canons and Sections is intended to govern conduct of judges and to be binding upon them. It is not intended, however, that every transgression will result in disciplinary action. Whether disciplinary action is appropriate, and the degree of discipline to be imposed, should be determined through a reasonable and reasoned application of the text and should depend on such factors as the seriousness of the transgression, whether there is a pattern of improper activity and the effect of the improper activity on others or on the judicial system.
The Code of Judicial Conduct is not intended as an exhaustive guide for the conduct of judges. They should also be governed in their judicial and personal conduct by general ethical standards. The Code is intended, however, to state basic standards which should govern the conduct of all judges and to provide guidance to assist judges in establishing and maintaining high standards of judicial and personal conduct.

Definitions
"Appropriate authority." denotes the authority with responsibility for initiation of *1042 disciplinary process with respect to the violation to be reported.
"Candidate." A candidate is a person seeking selection for or retention in judicial office by election or appointment. A person becomes a candidate for judicial office as soon as he or she makes a public announcement of candidacy, opens a campaign account as defined by Florida law, declares or files as a candidate with the election or appointment authority, or authorizes solicitation or acceptance of contributions or support. The term "candidate" has the same meaning when applied to a judge seeking election or appointment to nonjudicial office.
"Court personnel" does not include the lawyers in a proceeding before a judge.
"De minimis" denotes an insignificant interest that could not raise reasonable question as to a judge's impartiality.
"Economic interest" denotes ownership of a more than de minimis legal or equitable interest, or a relationship as officer, director, advisor, or other active participant in the affairs of a party, except that:
(i) ownership of an interest in a mutual or common investment fund that holds securities is not an economic interest in such securities unless the judge participates in the management of the fund or a proceeding pending or impending before the judge could substantially affect the value of the interest;
(ii) service by a judge as an officer, director, advisor, or other active participant in an educational, religious, charitable, fraternal, sororal, or civic organization, or service by a judge's spouse, parent, or child as an officer, director, advisor, or other active participant in any organization does not create an economic interest in securities held by that organization;
(iii) a deposit in a financial institution, the proprietary interest of a policy holder in a mutual insurance company, of a depositor in a mutual savings association, or of a member in a credit union, or a similar proprietary interest, is not an economic interest in the organization unless a proceeding pending or impending before the judge could substantially affect the value of the interest;
(iv) ownership of government securities is not an economic interest in the issuer unless a proceeding pending or impending before the judge could substantially affect the value of the securities.
"Fiduciary" includes such relationships as personal representative, administrator, trustee, guardian, and attorney in fact.
"Judge." When used herein this term means Article V, Florida Constitution judges and, where applicable, those persons performing judicial functions under the direction or supervision of an Article V judge.
"Knowingly," "knowledge," "known," or "knows" denotes actual knowledge of the fact in question. A person's knowledge may be inferred from circumstances.
"Law" denotes court rules as well as statutes, constitutional provisions, and decisional law.
"Member of the candidate's family" denotes a spouse, child, grandchild, parent, grandparent, or other relative or person with whom the candidate maintains a close familial relationship.
"Member of the judge's family" denotes a spouse, child, grandchild, parent, grandparent, or other relative or person with whom the judge maintains a close familial relationship.
"Member of the judge's family residing in the judge's household" denotes any relative of a judge by blood or marriage, or a person treated by a judge as a member of the judge's family, who resides in the judge's household.
"Nonpublic information" denotes information that, by law, is not available to the public. Nonpublic information may include but is not limited to: information that is sealed by statute or court order, impounded or communicated in camera; and information offered in grand jury proceedings, presentencing reports, dependency cases, or psychiatric reports.
"Political organization" denotes a political party or other group, the principal purpose *1043 of which is to further the election or appointment of candidates to political office.
"Public election." This term includes primary and general elections; it includes partisan elections, nonpartisan elections, and retention elections.
"Require." The rules prescribing that a judge "require" certain conduct of others are, like all of the rules in this Code, rules of reason. The use of the term "require" in that context means a judge is to exercise reasonable direction and control over the conduct of those persons subject to the judge's direction and control.
"Third degree of relationship." The following persons are relatives within the third degree of relationship: great-grandparent, grandparent, parent, uncle, aunt, brother, sister, child, grandchild, great-grandchild, nephew, or niece.

CANON 1
A JUDGE SHALL UPHOLD THE INTEGRITY AND INDEPENDENCE OF THE JUDICIARY
An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed and applied to further that objective.

COMMENTARY
Deference to the judgments and rulings of courts depends upon public confidence in the integrity and independence of judges. The integrity and independence of judges depend in turn upon their acting without fear or favor. Although judges should be independent, they must comply with the law, including the provisions of this Code. Public confidence in the impartiality of the judiciary is maintained by the adherence of each judge to this responsibility. Conversely, violation of this Code diminishes public confidence in the judiciary and thereby does injury to the system of government under law.

CANON 2
A JUDGE SHALL AVOID IMPROPRIETY AND THE APPEARANCE OF IMPROPRIETY IN ALL OF THE JUDGE'S ACTIVITIES
A. A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
B. A judge shall not allow family, social, political or other relationships to influence the judge's judicial conduct or judgment. A judge shall not lend the prestige of judicial office to advance the private interests of the judge or others; nor shall a judge convey or permit others to convey the impression that they are in a special position to influence the judge. A judge shall not testify voluntarily as a character witness.
C. A judge should not hold membership in an organization that practices invidious discrimination on the basis of race, sex, religion, or national origin. Membership in a fraternal, sororal, religious, or ethnic heritage organization shall not be deemed to be a violation of this provision.

COMMENTARY
Canon 2A. Irresponsible or improper conduct by judges erodes public confidence in the judiciary. A judge must avoid all impropriety and appearance of impropriety. A judge must expect to be the subject of constant public scrutiny. A judge must therefore accept restrictions on the judge's conduct that might be viewed as burdensome by the ordinary citizen and should do so freely and willingly.
The prohibition against behaving with impropriety or the appearance of impropriety applies to both the professional and personal conduct of a judge. Because it is not practicable to list all prohibited acts, the proscription is necessarily cast in general terms that extend to conduct by judges that is harmful although not specifically mentioned in the Code. Actual improprieties under this standard include violations of law, court rules, or other specific provisions of this Code. The test for appearance of impropriety is whether the conduct would create in reasonable *1044 minds, with knowledge of all the relevant circumstances that a reasonable inquiry would disclose, a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality, and competence is impaired.
See also Commentary under Section 2C.
Canon 2B. Maintaining the prestige of judicial office is essential to a system of government in which the judiciary functions independently of the executive and legislative branches. Respect for the judicial office facilitates the orderly conduct of legitimate judicial functions. Judges should distinguish between proper and improper use of the prestige of office in all of their activities. For example, it would be improper for a judge to allude to his or her judgeship to gain a personal advantage such as deferential treatment when stopped by a police officer for a traffic offense. Similarly, judicial letterhead must not be used for conducting a judge's personal business, although a judge may use judicial letterhead to write character reference letters when such letters are otherwise permitted under this Code.
A judge must avoid lending the prestige of judicial office for the advancement of the private interests of others. For example, a judge must not use the judge's judicial position to gain advantage in a civil suit involving a member of the judge's family. In contracts for publication of a judge's writings, a judge should retain control over the advertising to avoid exploitation of the judge's office. As to the acceptance of awards, see Section 5D(5) and Commentary.
Although a judge should be sensitive to possible abuse of the prestige of office, a judge may, based on the judge's personal knowledge, serve as a reference or provide a letter of recommendation. However, a judge must not initiate the communication of information to a sentencing judge or a probation or corrections officer but may provide to such persons information for the record in response to a formal request.
Judges may participate in the process of judicial selection by cooperating with appointing authorities and screening committees seeking names for consideration, and by responding to official inquiries concerning a person being considered for a judgeship. See also Canon 7 regarding use of a judge's name in political activities.
A judge must not testify voluntarily as a character witness because to do so may lend the prestige of the judicial office in support of the party for whom the judge testifies. Moreover, when a judge testifies as a witness, a lawyer who regularly appears before the judge may be placed in the awkward position of cross-examining the judge. A judge may, however, testify when properly summoned. Except in unusual circumstances where the demands of justice require, a judge should discourage a party from requiring the judge to testify as a character witness.
Canon 2C. Florida Canon 2C is derived from a recommendation by the American Bar Association and from the United States Senate Committee Resolution, 101st Congress, Second Session, as adopted by the United States Senate Judiciary Committee on August 2, 1990.
Membership of a judge in an organization that practices invidious discrimination gives rise to perceptions that the judge's impartiality is impaired. Whether an organization practices invidious discrimination is often a complex question to which judges should be sensitive. The answer cannot be determined from a mere examination of an organization's current membership rolls but rather depends on the history of the organization's selection of members and other relevant factors, such as that the organization is dedicated to the preservation of religious, ethnic, or cultural values of legitimate common interest to its members, or that it is in fact and effect an intimate, purely private organization whose membership limitations could not be constitutionally prohibited. See New York State Club Ass'n. Inc. v. City of New York, 487 U.S. 1, 108 S.Ct. 2225, 101 L.Ed.2d 1 (1988); Board of Directors of Rotary International v. Rotary Club of Duarte, 481 U.S. 537, 107 S.Ct. 1940, 95 L.Ed.2d 474 (1987); Roberts v. United States Jaycees, 468 U.S. 609, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984). Other relevant factors include the size and nature *1045 of the organization and the diversity of persons in the locale who might reasonably be considered potential members. Thus the mere absence of diverse membership does not by itself demonstrate a violation unless reasonable persons with knowledge of all the relevant circumstances would expect that the membership would be diverse in the absence of invidious discrimination. Absent such factors, an organization is generally said to discriminate invidiously if it arbitrarily excludes from membership on the basis of race, religion, sex, or national origin persons who would otherwise be admitted to membership.
This Canon is not intended to prohibit membership in religious and ethnic clubs, such as Knights of Columbus, Masons, B'nai B'rith, and Sons of Italy; civic organizations, such as Rotary, Kiwanis, and The Junior League; young people's organizations, such as Boy Scouts, Girl Scouts, Boy's Clubs, and Girl's Clubs; and charitable organizations, such as United Way and Red Cross.
Although Section 2C relates only to membership in organizations that invidiously discriminate on the basis of race, sex, religion or national origin, a judge's membership in an organization that engages in any discriminatory membership practices prohibited by the law of the jurisdiction also violates Canon 2 and Section 2A and gives the appearance of impropriety. In addition, it would be a violation of Canon 2 and Section 2A for a judge to arrange a meeting at a club that the judge knows practices invidious discrimination on the basis of race, sex, religion or national origin in its membership or other policies, or for the judge to regularly use such a club. Moreover, public manifestation by a judge of the judge's knowing approval of invidious discrimination on any basis gives the appearance of impropriety under Canon 2 and diminishes public confidence in the integrity and impartiality of the judiciary, in violation of Section 2A.
When a person who is a judge on the date this Code becomes effective learns that an organization to which the judge belongs engages in invidious discrimination that would preclude membership under Section 2C or under Canon 2 and Section 2A, the judge is permitted, in lieu of resigning, to make immediate efforts to have the organization discontinue its invidiously discriminatory practices, but is required to suspend participation in any other activities of the organization. If the organization fails to discontinue its invidiously discriminatory practices as promptly as possible (and in all events within a year of the judge's first learning of the practices), the judge is required to resign immediately from the organization.

CANON 3
A JUDGE SHALL PERFORM THE DUTIES OF JUDICIAL OFFICE IMPARTIALLY AND DILIGENTLY

A. Judicial Duties in General.
The judicial duties of a judge take precedence over all the judge's other activities. The judge's judicial duties include all the duties of the judge's office prescribed by law. In the performance of these duties, the specific standards set forth in the following sections apply.

B. Adjudicative Responsibilities.
(1) A judge shall hear and decide matters assigned to the judge except those in which disqualification is required.
(2) A judge shall be faithful to the law and maintain professional competence in it. A judge shall not be swayed by partisan interests, public clamor, or fear of criticism.
(3) A judge shall require order and decorum in proceedings before the judge.
(4) A judge shall be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom the judge deals in an official capacity, and shall require similar conduct of lawyers, and of staff, court officials, and others subject to the judge's direction and control.
(5) A judge shall perform judicial duties without bias or prejudice. A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, including but not limited to bias or prejudice based upon race, sex, religion, national origin, disability, age, sexual orientation, or socioeconomic status, and shall not permit staff, *1046 court officials, and others subject to the judge's direction and control to do so. This section does not preclude the consideration of race, sex, religion, national origin, disability, age, sexual orientation, socioeconomic status, or other similar factors when they are issues in the proceeding.
(6) A judge shall require lawyers in proceedings before the judge to refrain from manifesting, by words, gestures, or other conduct, bias or prejudice based upon race, sex, religion, national origin, disability, age, sexual orientation, or socioeconomic status, against parties, witnesses, counsel, or others. This Section 3B(6) does not preclude legitimate advocacy when race, sex, religion, national origin, disability, age, sexual orientation, socioeconomic status, or other similar factors are issues in the proceeding.
(7) A judge shall accord to every person who has a legal interest in a proceeding, or that person's lawyer, the right to be heard according to law. A judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding except that:
(a) Where circumstances require, ex parte communications for scheduling, administrative purposes, or emergencies that do not deal with substantive matters or issues on the merits are authorized, provided:
(i) the judge reasonably believes that no party will gain a procedural or tactical advantage as a result of the ex parte communication, and
(ii) the judge makes provision promptly to notify all other parties of the substance of the ex parte communication and allows an opportunity to respond.
(b) A judge may obtain the advice of a disinterested expert on the law applicable to a proceeding before the judge if the judge gives notice to the parties of the person consulted and the substance of the advice and affords the parties reasonable opportunity to respond.
(c) A judge may consult with other judges or with court personnel whose function is to aid the judge in carrying out the judge's adjudicative responsibilities.
(d) A judge may, with the consent of the parties, confer separately with the parties and their lawyers in an effort to mediate or settle matters pending before the judge.
(e) A judge may initiate or consider any ex parte communications when expressly authorized by law to do so.
(8) A judge shall dispose of all judicial matters promptly, efficiently, and fairly.
(9) A judge shall not, while a proceeding is pending or impending in any court, make any public comment that might reasonably be expected to affect its outcome or impair its fairness or make any nonpublic comment that might substantially interfere with a fair trial or hearing. The judge shall require similar abstention on the part of court personnel subject to the judge's direction and control. This Section does not prohibit judges from making public statements in the course of their official duties or from explaining for public information the procedures of the court. This Section does not apply to proceedings in which the judge is a litigant in a personal capacity.
(10) A judge shall not commend or criticize jurors for their verdict other than in a court order or opinion in a proceeding, but may express appreciation to jurors for their service to the judicial system and the community.
(11) A judge shall not disclose or use, for any purpose unrelated to judicial duties, non-public information acquired in a judicial capacity.

C. Administrative Responsibilities.
(1) A judge shall diligently discharge the judge's administrative responsibilities without bias or prejudice and maintain professional competence in judicial administration, and should cooperate with other judges and court officials in the administration of court business.
(2) A judge shall require staff, court officials, and others subject to the judge's direction *1047 and control to observe the standards of fidelity and diligence that apply to the judge and to refrain from manifesting bias or prejudice in the performance of their official duties.
(3) A judge with supervisory authority for the judicial performance of other judges shall take reasonable measures to assure the prompt disposition of matters before them and the proper performance of their other judicial responsibilities.
(4) A judge shall not make unnecessary appointments. A judge shall exercise the power of appointment impartially and on the basis of merit. A judge shall avoid nepotism and favoritism. A judge shall not approve compensation of appointees beyond the fair value of services rendered.

D. Disciplinary Responsibilities.
(1) A judge who receives information or has actual knowledge that substantial likelihood exists that another judge has committed a violation of this Code shall take appropriate action.
(2) A judge who receives information or has actual knowledge that substantial likelihood exists that a lawyer has committed a violation of the Rules Regulating The Florida Bar shall take appropriate action.
(3) Acts of a judge, in the discharge of disciplinary responsibilities, required or permitted by Sections 3D(1) and 3D(2) are part of a judge's judicial duties and shall be absolutely privileged, and no civil action predicated thereon may be instituted against the judge.

E. Disqualification.
(1) A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:
(a) the judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of disputed evidentiary facts concerning the proceeding;
(b) the judge served as a lawyer or was the lower court judge in the matter in controversy, or a lawyer with whom the judge previously practiced law served during such association as a lawyer concerning the matter, or the judge has been a material witness concerning it;
(c) the judge knows that he or she individually or as a fiduciary, or the judge's spouse, parent, or child wherever residing, or any other member of the judge's family residing in the judge's household has an economic interest in the subject matter in controversy or in a party to the proceeding or has any other more than de minimis interest that could be substantially affected by the proceeding;
(d) the judge or the judge's spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:
(i) is a party to the proceeding, or an officer, director, or trustee of a party;
(ii) is acting as a lawyer in the proceeding;
(iii) is known by the judge to have a more than de minimus interest that could be substantially affected by the proceeding;
(iv) is to the judge's knowledge likely to be a material witness in the proceeding.
(2) A judge should keep informed about the judge's personal and fiduciary economic interests, and make a reasonable effort to keep informed about the economic interests of the judge's spouse and minor children residing in the judge's household.

F. Remittal of Disqualification.
A judge disqualified by the terms of Section 3E may disclose on the record the basis of the judge's disqualification and may ask the parties and their lawyers to consider, out of the presence of the judge, whether to waive disqualification. If following disclosure of any basis for disqualification other than personal bias or prejudice concerning a party, the parties and lawyers, without participation by the judge, all agree the judge should not be disqualified, and the judge is then willing to participate, the judge may participate in the proceeding. The agreement shall be incorporated in the record of the proceeding.

*1048 COMMENTARY
Canon 3B(4). The duty to hear all proceedings fairly and with patience is not inconsistent with the duty to dispose promptly of the business of the court. Judges can be efficient and business-like while being patient and deliberate.
Canon 3B(5). A judge must refrain from speech, gestures or other conduct that could reasonably be perceived as sexual harassment and must require the same standard of conduct of others subject to the judge's direction and control.
A judge must perform judicial duties impartially and fairly. A judge who manifests bias on any basis in a proceeding impairs the fairness of the proceeding and brings the judiciary into disrepute. Facial expression and body language, in addition to oral communication, can give to parties or lawyers in the proceeding, jurors, the media and others an appearance of judicial bias. A judge must be alert to avoid behavior that may be perceived as prejudicial.
Canon 3B(7). The proscription against communications concerning a proceeding includes communications from lawyers, law teachers, and other persons who are not participants in the proceeding, except to the limited extent permitted.
To the extent reasonably possible, all parties or their lawyers shall be included in communications with a judge.
Whenever presence of a party or notice to a party is required by Section 3B(7), it is the party's lawyer, or if the party is unrepresented, the party who is to be present or to whom notice is to be given.
An appropriate and often desirable procedure for a court to obtain the advice of a disinterested expert on legal issues is to invite the expert to file a brief as amicus curiae.
Certain ex parte communication is approved by Section 3B(7) to facilitate scheduling and other administrative purposes and to accommodate emergencies. In general, however, a judge must discourage ex parte communication and allow it only if all the criteria stated in Section 3B(7) are clearly met. A judge must disclose to all parties all ex parte communications described in Sections 3B(7)(a) and 3B(7)(b) regarding a proceeding pending or impending before the judge.
A judge must not independently investigate facts in a case and must consider only the evidence presented.
A judge may request a party to submit proposed findings of fact and conclusions of law, so long as the other parties are apprised of the request and are given an opportunity to respond to the proposed findings and conclusions.
A judge must make reasonable efforts, including the provision of appropriate supervision, to ensure that Section 3B(7) is not violated through law clerks or other personnel on the judge's staff.
If communication between the trial judge and the appellate court with respect to a proceeding is permitted, a copy of any written communication or the substance of any oral communication should be provided to all parties.
Canon 3B(8). In disposing of matters promptly, efficiently, and fairly, a judge must demonstrate due regard for the rights of the parties to be heard and to have issues resolved without unnecessary cost or delay. Containing costs while preserving fundamental rights of parties also protects the interests of witnesses and the general public. A judge should monitor and supervise cases so as to reduce or eliminate dilatory practices, avoidable delays, and unnecessary costs. A judge should encourage and seek to facilitate settlement, but parties should not feel coerced into surrendering the right to have their controversy resolved by the courts.
Prompt disposition of the court's business requires a judge to devote adequate time to judicial duties, to be punctual in attending court and expeditious in determining matters under submission, and to insist that court officials, litigants, and their lawyers cooperate with the judge to that end.
Canon 3B(9). The requirement that judges abstain from public comment regarding a pending or impending proceeding continues during any appellate process and until final *1049 disposition. This Section does not prohibit a judge from commenting on proceedings in which the judge is a litigant in a personal capacity, but in cases such as a writ of mandamus where the judge is a litigant in an official capacity, the judge must not comment publicly. The conduct of lawyers relating to trial publicity is governed by Rule 4-3.6 of the Rules Regulating the Florida Bar.
Canon 3B(10). Commending or criticizing jurors for their verdict may imply a judicial expectation in future cases and may impair a juror's ability to be fair and impartial in a subsequent case.
Canon 3C(4). Appointees of a judge include assigned counsel, officials such as referees, commissioners, special masters, receivers, mediators, arbitrators, and guardians and personnel such as clerks, secretaries, and bailiffs. Consent by the parties to an appointment or an award of compensation does not relieve the judge of the obligation prescribed by Section 3C(4). See also Fla. Stat. § 112.3135 (1991).
Canon 3D(3). Appropriate action may include direct communication with the judge or lawyer who has committed the violation, other direct action if available, and reporting the violation to the appropriate authority or other agency or body.
Canon 3E(1). Under this rule, a judge is disqualified whenever the judge's impartiality might reasonably be questioned, regardless of whether any of the specific rules in Section 3E(1) apply. For example, if a judge were in the process of negotiating for employment with a law firm, the judge would be disqualified from any matters in which that law firm appeared, unless the disqualification was waived by the parties after disclosure by the judge.
A judge should disclose on the record information that the judge believes the parties or their lawyers might consider relevant to the question of disqualification, even if the judge believes there is no real basis for disqualification.
By decisional law, the rule of necessity may override the rule of disqualification. For example, a judge might be required to participate in judicial review of a judicial salary statute, or might be the only judge available in a matter requiring immediate judicial action, such as a hearing on probable cause or a temporary restraining order. In the latter case, the judge must disclose on the record the basis for possible disqualification and use reasonable efforts to transfer the matter to another judge as soon as practicable.
Canon 3E(1)(b). A lawyer in a government agency does not ordinarily have an association with other lawyers employed by that agency within the meaning of Section 3E(1)(b); a judge formerly employed by a government agency, however, should disqualify himself or herself in a proceeding if the judge's impartiality might reasonably be questioned because of such association.
Canon 3E(1)(d). The fact that a lawyer in a proceeding is affiliated with a law firm with which a relative of the judge is affiliated does not of itself disqualify the judge. Under appropriate circumstances, the fact that "the judge's impartiality might reasonably be questioned" under Section 3E(1), or that the relative is known by the judge to have an interest in the law firm that could be "substantially affected by the outcome of the proceeding" under Section 3E(1)(d)(iii) may require the judge's disqualification.
Canon 3F. A remittal procedure provides the parties an opportunity to proceed without delay if they wish to waive the disqualification. To assure that consideration of the question of remittal is made independently of the judge, a judge must not solicit, seek, or hear comment on possible remittal or waiver of the disqualification unless the lawyers jointly propose remittal after consultation as provided in the rule. A party may act through counsel if counsel represents on the record that the party has been consulted and consents. As a practical matter, a judge may wish to have all parties and their lawyers sign the remittal agreement.

CANON 4
A JUDGE MAY ENGAGE IN ACTIVITIES TO IMPROVE THE LAW, THE LEGAL SYSTEM, AND THE ADMINISTRATION OF JUSTICE
*1050 A. A judge shall conduct all of the judge's quasi-judicial activities so that they do not:
(1) cast reasonable doubt on the judge's capacity to act impartially as a judge;
(2) demean the judicial office; or
(3) interfere with the proper performance of judicial duties.
B. A judge may speak, write, lecture, teach and participate in other quasi-judicial activities concerning the law, the legal system, and the administration of justice, subject to the requirements of this Code.
C. A judge shall not appear at a public hearing before, or otherwise consult with, an executive or legislative body or official except on matters concerning the law, the legal system or the administration of justice or except when acting pro se in a matter involving the judge or the judge's interests.
D. A judge may serve as a member, officer, director, trustee or non-legal advisor of an organization or governmental agency devoted to the improvement of the law, the legal system or the administration of justice, subject to the following limitations and the other requirements of this Code.
(1) A judge shall not serve as an officer, director, trustee or non-legal advisor if it is likely that the organization
(a) will be engaged in proceedings that would ordinarily come before the judge, or
(b) will be engaged frequently in adversary proceedings in the court of which the judge is a member or in any court subject to the appellate jurisdiction of the court of which the judge is a member.
(2) A judge as an officer, director, trustee or non-legal advisor, or as a member or otherwise:
(a) may assist such an organization in planning fund-raising and may participate in the management and investment of the organization's funds, but shall not personally participate in the solicitation of funds or other fund-raising activities, except that a judge may solicit funds from other judges over whom the judge does not exercise supervisory or appellate authority;
(b) may make recommendations to public and private fund-granting organizations on projects and programs concerning the law, the legal system or the administration of justice;
(c) shall not personally participate in membership solicitation if the solicitation might reasonably be perceived as coercive or, except as permitted in Section 4D(2)(a), if the membership solicitation is essentially a fund-raising mechanism;
(d) shall not use or permit the use of the prestige of judicial office for fund-raising or membership solicitation.

COMMENTARY
Canon 4A. A judge is encouraged to participate in activities designed to improve the law, the legal system, and the administration of justice. In doing so, however, it must be understood that expressions of bias or prejudice by a judge, even outside the judge's judicial activities, may cast reasonable doubt on the judge's capacity to act impartially as a judge. Expressions which may do so include jokes or other remarks demeaning individuals on the basis of their race, sex, religion, national origin, disability, age, sexual orientation or socioeconomic status. See Section 2C and accompanying Commentary.
Canon 4B. As a judicial officer and person specially learned in the law, a judge is in a unique position to contribute to the improvement of the law, the legal system, and the administration of justice, including revision of substantive and procedural law and improvement of criminal and juvenile justice. To the extent that time permits, a judge is encouraged to do so, either independently or through a bar association, judicial conference or other organization dedicated to the improvement of the law. Judges may participate in efforts to promote the fair administration of justice, the independence of the judiciary and the integrity of the legal profession and may express opposition to the persecution of lawyers and judges in other countries because of their professional activities.
The phrase "subject to the requirements of this Code" is included to remind judges that *1051 the use of permissive language in various Sections of the Code does not relieve a judge from the other requirements of the Code that apply to the specific conduct.
Canon 4C. See Section 2B regarding the obligation to avoid improper influence.
Canon 4D(1). The changing nature of some organizations and of their relationship to the law makes it necessary for a judge regularly to reexamine the activities of each organization with which the judge is affiliated to determine if it is proper for the judge to continue the affiliation. For example, the boards of some legal aid organizations now make policy decisions that may have political significance or imply commitment to causes that may come before the courts for adjudication.
Canon 4D(2). A judge may solicit membership or endorse or encourage membership efforts for an organization devoted to the improvement of the law, the legal system or the administration of justice as long as the solicitation cannot reasonably be perceived as coercive and is not essentially a fund-raising mechanism. Solicitation of funds for an organization and solicitation of memberships similarly involve the danger that the person solicited will feel obligated to respond favorably to the solicitor if the solicitor is in a position of influence or control. A judge must not engage in direct, individual solicitation of funds or memberships in person, in writing or by telephone except in the following cases: 1) a judge may solicit for funds or memberships other judges over whom the judge does not exercise supervisory or appellate authority, 2) a judge may solicit other persons for membership in the organizations described above if neither those persons nor persons with whom they are affiliated are likely ever to appear before the court on which the judge serves and 3) a judge who is an officer of such an organization may send a general membership solicitation mailing over the judge's signature.
Use of an organization letterhead for fund-raising or membership solicitation does not violate Section 4D(2) provided the letterhead lists only the judge's name and office or other position in the organization, and, if comparable designations are listed for other persons, the judge's judicial designation. In addition, a judge must also make reasonable efforts to ensure that the judge's staff, court officials and others subject to the judge's direction and control do not solicit funds on the judge's behalf for any purpose, charitable or otherwise.
A judge must not be a speaker or guest of honor at an organization's fund-raising event, but mere attendance at such an event is permissible if otherwise consistent with this Code.

CANON 5
A JUDGE SHALL REGULATE EXTRAJUDICIAL ACTIVITIES TO MINIMIZE THE RISK OF CONFLICT WITH JUDICIAL DUTIES
A. Extrajudicial Activities in General. A judge shall conduct all of the judge's extrajudicial activities so that they do not:
(1) cast reasonable doubt on the judge's capacity to act impartially as a judge;
(2) demean the judicial office; or
(3) interfere with the proper performance of judicial duties.
B. Avocational Activities. A judge may speak, write, lecture, teach and participate in other extrajudicial activities concerning non-legal subjects, subject to the requirements of this Code.
C. Governmental, Civic or Charitable Activities.
(1) A judge shall not appear at a public hearing before, or otherwise consult with, an executive or legislative body or official except on matters concerning the law, the legal system or the administration of justice or except when acting pro se in a matter involving the judge or the judge's interests.
(2) A judge shall not accept appointment to a governmental committee or commission or other governmental position that is concerned with issues of fact or policy on matters other than the improvement of the law, the legal system or the administration of justice. A judge may, however, represent a country, state or locality on ceremonial occasions or in connection with historical, educational or cultural activities.
*1052 (3) A judge may serve as an officer, director, trustee or non-legal advisor of an educational, religious, charitable, fraternal, sororal or civic organization not conducted for profit, subject to the following limitations and the other requirements of this Code.
(a) A judge shall not serve as an officer, director, trustee or non-legal advisor if it is likely that the organization
(i) will be engaged in proceedings that would ordinarily come before the judge, or
(ii) will be engaged frequently in adversary proceedings in the court of which the judge is a member or in any court subject to the appellate jurisdiction of the court of which the judge is a member.
(b) A judge as an officer, director, trustee or non-legal advisor, or as a member or otherwise:
(i) may assist such an organization in planning fund-raising and may participate in the management and investment of the organization's funds, but shall not personally participate in the solicitation of funds or other fund-raising activities, except that a judge may solicit funds from other judges over whom the judge does not exercise supervisory or appellate authority;
(ii) shall not personally participate in membership solicitation if the solicitation might reasonably be perceived as coercive or, except as permitted in Section 5C(3)(b)(i), if the membership solicitation is essentially a fund-raising mechanism;
(iii) shall not use or permit the use of the prestige of judicial office for fund-raising or membership solicitation.
D. Financial Activities.
(1) A judge shall not engage in financial and business dealings that
(a) may reasonably be perceived to exploit the judge's judicial position, or
(b) involve the judge in frequent transactions or continuing business relationships with those lawyers or other persons likely to come before the court on which the judge serves.
(2) A judge may, subject to the requirements of this Code, hold and manage investments of the judge and members of the judge's family, including real estate, and engage in other remunerative activity.
(3) A judge shall not serve as an officer, director, manager, general partner, advisor or employee of any business entity except that a judge may, subject to the requirements of this Code, manage and participate in:
(a) a business closely held by the judge or members of the judge's family, or
(b) a business entity primarily engaged in investment of the financial resources of the judge or members of the judge's family.
(4) A judge shall manage the judge's investments and other financial interests to minimize the number of cases in which the judge is disqualified. As soon as the judge can do so without serious financial detriment, the judge shall divest himself or herself of investments and other financial interests that might require frequent disqualification.
(5) A judge shall not accept, and shall urge members of the judge's family residing in the judge's household not to accept, a gift, bequest, favor or loan from anyone except for:
(a) a gift incident to a public testimonial, books, tapes and other resource materials supplied by publishers on a complimentary basis for official use, or an invitation to the judge and the judge's spouse or guest to attend a bar-related function or an activity devoted to the improvement of the law, the legal system or the administration of justice;
(b) a gift, award or benefit incident to the business, profession or other separate activity of a spouse or other family member of a judge residing in the judge's household, including gifts, awards and benefits for the use of both the spouse or other family member and the judge (as spouse or family member), provided the gift, award or benefit could not reasonably be perceived as intended to influence the judge in the performance of judicial duties;
(c) ordinary social hospitality;
(d) a gift from a relative or friend, for a special occasion, such as a wedding, anniversary *1053 or birthday, if the gift is fairly commensurate with the occasion and the relationship;
(e) a gift, bequest, favor or loan from a relative or close personal friend whose appearance or interest in a case would in any event require disqualification under Canon 3E;
(f) a loan from a lending institution in its regular course of business on the same terms generally available to persons who are not judges;
(g) a scholarship or fellowship awarded on the same terms and based on the same criteria applied to other applicants; or
(h) any other gift, bequest, favor or loan, only if: the donor is not a party or other person who has come or is likely to come or whose interests have come or are likely to come before the judge; and, if its value exceeds $100.00, the judge reports it in the same manner as the judge reports compensation in Section 6B.
E. Fiduciary Activities.
(1) A judge shall not serve as executor, administrator or other personal representative, trustee, guardian, attorney in fact or other fiduciary, except for the estate, trust or person of a member of the judge's family, and then only if such service will not interfere with the proper performance of judicial duties.
(2) A judge shall not serve as a fiduciary if it is likely that the judge as a fiduciary will be engaged in proceedings that would ordinarily come before the judge, or if the estate, trust or ward becomes involved in adversary proceedings in the court on which the judge serves or one under its appellate jurisdiction.
(3) The same restrictions on financial activities that apply to a judge personally also apply to the judge while acting in a fiduciary capacity.
F. Service as Arbitrator or Mediator. A judge shall not act as an arbitrator or mediator or otherwise perform judicial functions in a private capacity unless expressly authorized by law or Court rule.
G. Practice of Law. A judge shall not practice law. Notwithstanding this prohibition, a judge may act pro se and may, without compensation, give legal advice to and draft or review documents for a member of the judge's family.

COMMENTARY
Canon 5A. Complete separation of a judge from extra-judicial activities is neither possible nor wise; a judge should not become isolated from the community in which the judge lives.
Expressions of bias or prejudice by a judge, even outside the judge's judicial activities, may cast reasonable doubt on the judge's capacity to act impartially as a judge. Expressions which may do so include jokes or other remarks demeaning individuals on the basis of their race, sex, religion, national origin, disability, age, sexual orientation or socioeconomic status. See Section 2C and accompanying Commentary.
Canon 5B. In this and other Sections of Canon 5, the phrase "subject to the requirements of this Code" is used, notably in connection with a judge's governmental, civic or charitable activities. This phrase is included to remind judges that the use of permissive language in various Sections of the Code does not relieve a judge from the other requirements of the Code that apply to the specific conduct.
Canon 5C(1). See Section 2B regarding the obligation to avoid improper influence.
Canon 5C(2). Section 5C(2) prohibits a judge from accepting any governmental position except one relating to the law, legal system or administration of justice as authorized by Section 4D. The appropriateness of accepting extrajudicial assignments must be assessed in light of the demands on judicial resources created by crowded dockets and the need to protect the courts from involvement in extrajudicial matters that may prove to be controversial. Judges should not accept governmental appointments that are likely to interfere with the effectiveness and independence of the judiciary.
Section 5C(2) does not govern a judge's service in a nongovernmental position. See Section 5C(3) permitting service by a judge with educational, religious, charitable, fraternal, *1054 sororal or civic organizations not conducted for profit. For example, service on the board of a public educational institution, unless it were a law school, would be prohibited under Section 5C(2), but service on the board of a public law school or any private educational institution would generally be permitted under Section 5C(3).
Canon 5C(3). Section 5C(3) does not apply to a judge's service in a governmental position unconnected with the improvement of the law, the legal system or the administration of justice; see Section 5C(2).
See Commentary to Section 5B regarding use of the phrase "subject to the following limitations and the other requirements of this Code." As an example of the meaning of the phrase, a judge permitted by Section 5C(3) to serve on the board of a fraternal institution may be prohibited from such service by Sections 2C or 5A if the institution practices invidious discrimination or if service on the board otherwise casts reasonable doubt on the judge's capacity to act impartially as a judge.
Service by a judge on behalf of a civic or charitable organization may be governed by other provisions of Canon 5 in addition to Section 5C. For example, a judge is prohibited by Section 5G from serving as a legal advisor to a civic or charitable organization.
Canon 5C(3)(a). The changing nature of some organizations and of their relationship to the law makes it necessary for a judge regularly to reexamine the activities of each organization with which the judge is affiliated to determine if it is proper for the judge to continue the affiliation. For example, in many jurisdictions charitable hospitals are now more frequently in court than in the past.
Canon 5C(3)(b). A judge may solicit membership or endorse or encourage membership efforts for a nonprofit educational, religious, charitable, fraternal, sororal or civic organization as long as the solicitation cannot reasonably be perceived as coercive and is not essentially a fund-raising mechanism. Solicitation of funds for an organization and solicitation of memberships similarly involve the danger that the person solicited will feel obligated to respond favorably to the solicitor if the solicitor is in a position of influence or control. A judge must not engage in direct, individual solicitation of funds or memberships in person, in writing or by telephone except in the following cases: 1) a judge may solicit for funds or memberships other judges over whom the judge does not exercise supervisory or appellate authority, 2) a judge may solicit other persons for membership in the organizations described above if neither those persons nor persons with whom they are affiliated are likely ever to appear before the court on which the judge serves and 3) a judge who is an officer of such an organization may send a general membership solicitation mailing over the judge's signature.
Use of an organization letterhead for fund-raising or membership solicitation does not violate Section 5C(3)(b) provided the letterhead lists only the judge's name and office or other position in the organization, and, if comparable designations are listed for other persons, the judge's judicial designation. In addition, a judge must also make reasonable efforts to ensure that the judge's staff, court officials and others subject to the judge's direction and control do not solicit funds on the judge's behalf for any purpose, charitable or otherwise.
A judge must not be a speaker or guest of honor at an organization's fund-raising event, but mere attendance at such an event is permissible if otherwise consistent with this Code.
Canon 5D(1). When a judge acquires in a judicial capacity information, such as material contained in filings with the court, that is not yet generally known, the judge must not use the information for private gain. See Section 2B; see also Section 3B(11).
A judge must avoid financial and business dealings that involve the judge in frequent transactions or continuing business relationships with persons likely to come either before the judge personally or before other judges on the judge's court. In addition, a judge should discourage members of the judge's family from engaging in dealings that would reasonably appear to exploit the judge's judicial position. This rule is necessary *1055 to avoid creating an appearance of exploitation of office or favoritism and to minimize the potential for disqualification. With respect to affiliation of relatives of the judge with law firms appearing before the judge, see Commentary to Section 3E(1) relating to disqualification.
Participation by a judge in financial and business dealings is subject to the general prohibitions in Section 5A against activities that tend to reflect adversely on impartiality, demean the judicial office, or interfere with the proper performance of judicial duties. Such participation is also subject to the general prohibition in Canon 2 against activities involving impropriety or the appearance of impropriety and the prohibition in Section 2B against the misuse of the prestige of judicial office. In addition, a judge must maintain high standards of conduct in all of the judge's activities, as set forth in Canon 1. See Commentary for Section 5B regarding use of the phrase "subject to the requirements of this Code."
Canon 5D(2). This Section provides that, subject to the requirements of this Code, a judge may hold and manage investments owned solely by the judge, investments owned solely by a member or members of the judge's family, and investments owned jointly by the judge and members of the judge's family.
Canon 5D(3). Subject to the requirements of this Code, a judge may participate in a business that is closely held either by the judge alone, by members of the judge's family, or by the judge and members of the judge's family.
Although participation by a judge in a closely-held family business might otherwise be permitted by Section 5D(3), a judge may be prohibited from participation by other provisions of this Code when, for example, the business entity frequently appears before the judge's court or the participation requires significant time away from judicial duties. Similarly, a judge must avoid participating in a closely-held family business if the judge's participation would involve misuse of the prestige of judicial office.
Canon 5D(5). Section 5D(5) does not apply to contributions to a judge's campaign for judicial office, a matter governed by Canon 7.
Because a gift, bequest, favor or loan to a member of the judge's family residing in the judge's household might be viewed as intended to influence the judge, a judge must inform those family members of the relevant ethical constraints upon the judge in this regard and discourage those family members from violating them. A judge cannot, however, reasonably be expected to know or control all of the financial or business activities of all family members residing in the judge's household.
Canon 5D(5)(a). Acceptance of an invitation to a law-related function is governed by Section 5D(5)(a); acceptance of an invitation paid for by an individual lawyer or group of lawyers is governed by Section 5D(5)(h).
A judge may accept a public testimonial or a gift incident thereto only if the donor organization is not an organization whose members comprise or frequently represent the same side in litigation, and the testimonial and gift are otherwise in compliance with other provisions of this Code. See Sections 5A(1) and 2B.
Canon 5D(5)(d). A gift to a judge, or to a member of the judge's family living in the judge's household, that is excessive in value raises questions about the judge's impartiality and the integrity of the judicial office and might require disqualification of the judge where disqualification would not otherwise be required. See, however, Section 5D(5)(e).
Canon 5D(5)(h). Section 5D(5)(h) prohibits judges from accepting gifts, favors, bequests or loans from lawyers or their firms if they have come or are likely to come before the judge; it also prohibits gifts, favors, bequests or loans from clients of lawyers or their firms when the clients' interests have come or are likely to come before the judge.
Canon 5E(3). The restrictions imposed by this Canon may conflict with the judge's obligation as a fiduciary. For example, a judge should resign as trustee if detriment to the trust would result from divestiture of holdings the retention of which would place the judge in violation of Section 5D(4).
*1056 Canon 5F. Section 5F does not prohibit a judge from participating in arbitration, mediation or settlement conferences performed as part of judicial duties.
Canon 5G. This prohibition refers to the practice of law in a representative capacity and not in a pro se capacity. A judge may act for himself or herself in all legal matters, including matters involving litigation and matters involving appearances before or other dealings with legislative and other governmental bodies. However, in so doing, a judge must not abuse the prestige of office to advance the interests of the judge or the judge's family. See Section 2B.
The Code allows a judge to give legal advice to and draft legal documents for members of the judge's family, so long as the judge receives no compensation. A judge must not, however, act as an advocate or negotiator for a member of the judge's family in a legal matter.

CANON 6
FISCAL MATTERS OF A JUDGE SHALL BE CONDUCTED IN A MANNER THAT DOES NOT GIVE THE APPEARANCE OF INFLUENCE OR IMPROPRIETY; A JUDGE SHALL REGULARLY FILE PUBLIC REPORTS AS REQUIRED BY ARTICLE II, SECTION 8, OF THE CONSTITUTION OF FLORIDA, AND SHALL PUBLICLY REPORT GIFTS; ADDITIONAL FINANCIAL INFORMATION SHALL BE FILED WITH THE JUDICIAL QUALIFICATIONS COMMISSION TO ENSURE FULL FINANCIAL DISCLOSURE

A. Compensation for Quasi-Judicial and Extrajudicial Services and Reimbursement of Expenses.
A judge may receive compensation and reimbursement of expenses for the quasi-judicial and extrajudicial activities permitted by this Code, if the source of such payments does not give the appearance of influencing the judge in the performance of judicial duties or otherwise give the appearance of impropriety, subject to the following restrictions:
(1) Compensation. Compensation shall not exceed a reasonable amount nor shall it exceed what a person who is not a judge would receive for the same activity.
(2) Expense Reimbursement. Expense reimbursement shall be limited to the actual cost of travel, food, and lodging reasonably incurred by the judge and, where appropriate to the occasion, to the judge's spouse. Any payment in excess of such an amount is compensation.

B. Public Financial Reporting.
(1) Income and Assets. A judge shall file such public report as may be required by law for all public officials to comply fully with the provisions of Article II, Section 8, of the Constitution of Florida. The form for public financial disclosure shall be that recommended or adopted by the Florida Commission on Ethics for use by all public officials. The form shall be filed in the office of the Secretary of State on the date prescribed by law, and a copy shall be filed simultaneously with the Judicial Qualifications Commission.
(2) Gifts. A judge shall file a public report of all gifts which are required to be disclosed under Canon 5D(5)(h) of the Code of Judicial Conduct. The report of gifts received in the preceding calendar year shall be filed in the office of the Secretary of State on or before July 1 of each year. A copy shall be filed simultaneously with the Judicial Qualifications Commission.

C. Confidential Financial Reporting to the Judicial Qualifications Commission.
To ensure that complete financial information is available for all judicial officers, there shall be filed with the Judicial Qualifications Commission on or before July 1 of each year, if not already included in the public report to be filed under Canon 6B(1) and (2), a verified list of the names of the corporations and other business entities in which the judge has a financial interest as of December 31 of the preceding year, which shall be transmitted in a separate sealed envelope, placed by the Commission in safekeeping, and not be opened or the contents thereof disclosed except in the manner hereinafter provided.
At any time during or after the pendency of a cause, any party may request information as to whether the most recent list filed by the judge or judges before whom the *1057 cause is or was pending contains the name of any specific person or corporation or other business entity which is a party to the cause or which has a substantial direct or indirect financial interest in its outcome. Neither the making of the request nor the contents thereof shall be revealed by the chair to any judge or other person except at the instance of the individual making the request. If the request meets the requirements hereinabove set forth, the chair shall render a prompt answer thereto and thereupon return the report to safekeeping for retention in accordance with the provisions hereinabove stated. All such requests shall be verified and transmitted to the chair of the Commission on forms to be approved by it.

D. Limitation of Disclosure.
Disclosure of a judge's income, debts, investments or other assets is required only to the extent provided in this Canon and in Sections 3E and 3F, or as otherwise required by law.

COMMENTARY
Canon 6A. See Section 5D(5)(a)-(h) regarding reporting of gifts, bequests and loans.
The Code does not prohibit a judge from accepting honoraria or speaking fees provided that the compensation is reasonable and commensurate with the task performed. A judge should ensure, however, that no conflicts are created by the arrangement. Judges must not appear to trade on the judicial position for personal advantage. Nor should a judge spend significant time away from court duties to meet speaking or writing commitments for compensation. In addition, the source of the payment must not raise any question of undue influence or the judge's ability or willingness to be impartial.
Canon 6C. Subparagraph A prescribes guidelines for additional compensation and the reimbursement of expense funds received by a judge.
Subparagraphs B and C prescribe the three types of financial disclosure reports required of each judicial officer.
The first is the Ethics Commission's constitutionally required form pursuant to Article II, Section 8, of the Constitution. It must be filed each year as prescribed by law. The financial reporting period is for the previous calendar year. The filing of the income tax return is a permissible alternative.
The second is a report of gifts received during the preceding calendar year to be filed publicly in the Secretary of State's office. The gifts to be reported are in accordance with Canon 5D(5)(h). This reporting is in lieu of that prescribed by statute as stated in the Supreme Court's opinion rendered in In re Code of Judicial Conduct, 281 So.2d 21 (Fla. 1973). The form for this report is as follows:

Form 6A. Gift Disclosure
All judicial officers must file with the Secretary of State a list of all gifts received during the preceding calendar year of a value in excess of $100.00 as provided in Canon 5D(5) and Canon 6B(2) of the Code of Judicial Conduct.
Name: ____________________________________________________________________
Telephone: _______________________________________________________________
Address: _________________________________________________________________
Position Held: ___________________________________________________________
Please identify all gifts you received during the preceding calendar year
of a value in excess of $100.00, as required by Canon 5D(5) and Canon
6B(2) of the Code of Judicial Conduct.
 _________________________________________________________________
 _________________________________________________________________
 _________________________________________________________________
 _________________________________________________________________
*1058 OATH
State of Florida
County of _________________________
I, __________, the public official filing this disclosure statement, being
first duly sworn, do depose on oath and say that the facts set forth in the
above statement are true, correct, and complete to the best of my knowledge
and belief.
_______________________
(Signature of Reporting Official)
_______________________
(Signature of Officer Authorized to Administer Oaths)
 My Commission expires ________
 Sworn to and subscribed before me this
 _________ day of _____, 19__.
The third financial disclosure report is prescribed in subparagraph C. This provision ensures that there will be complete financial information for all judicial officers available with the Judicial Qualifications Commission by requiring that full disclosure be filed confidentially with the Commission in the event the limited disclosure alternative is selected under the provisions of Article II, Section 8.
The amendment to this Canon requires in 6B(2) a separate gift report to be filed in the office of the Secretary of State on or before July 1 of each year. The form to be used for that report is included in the commentary to Canon 6. It should be noted that Canon 5, as it presently exists, restricts and prohibits the receipt of certain gifts. This provision is not applicable to other public officials.
With reference to financial disclosure if the judge chooses the limited disclosure alternative available under the provision of Article II, Section 8, of the Constitution of Florida, without the inclusion of the judge's Federal Income Tax Return, then the judge must file with the Commission a list of the names of corporations or other business entities in which the judge has a financial interest even though the amount is less than $1,000. This information remains confidential until a request is made by a party to a cause before the judge. This latter provision continues to ensure that complete financial information for all judicial officers is available with the Judicial Qualifications Commission and that parties who are concerned about a judge's possible financial interest have a means of obtaining that information as it pertains to a particular cause before the judge.
Canon 6D. Section 3E requires a judge to disqualify himself or herself in any proceeding in which the judge has an economic interest. See "economic interest" as explained in the Definitions Section. Section 5D requires a judge to refrain from engaging in business and from financial activities that might interfere with the impartial performance of judicial duties; Section 6B requires a judge to report all compensation the judge received for activities outside judicial office. A judge has the rights of any other citizen, including the right to privacy of the judge's financial affairs, except to the extent that limitations established by law are required to safeguard the proper performance of the judge's duties.

CANON 7
A JUDGE OR CANDIDATE FOR JUDICIAL OFFICE SHALL REFRAIN FROM INAPPROPRIATE POLITICAL ACTIVITY
A. All Judges and Candidates.
(1) Except as authorized in Sections 7B(2), 7C(2) and 7C(3), a judge or a candidate for election or appointment to judicial office shall not:
(a) act as a leader or hold an office in a political organization;
*1059 (b) publicly endorse or publicly oppose another candidate for public office;
(c) make speeches on behalf of a political organization;
(d) attend political gatherings; or
(e) solicit funds for, pay an assessment to or make a contribution to a political organization or candidate, or purchase tickets for political party dinners or other functions.
(2) A judge shall resign from judicial office upon becoming a candidate for a non-judicial office either in a primary or in a general election, except that the judge may continue to hold judicial office while being a candidate for election to or serving as a delegate in a state constitutional convention if the judge is otherwise permitted by law to do so.
(3) A candidate for a judicial office:
(a) shall maintain the dignity appropriate to judicial office and act in a manner consistent with the integrity and independence of the judiciary, and shall encourage members of the candidate's family to adhere to the same standards of political conduct in support of the candidate as apply to the candidate;
(b) shall prohibit employees and officials who serve at the pleasure of the candidate, and shall discourage other employees and officials subject to the candidate's direction and control from doing on the candidate's behalf what the candidate is prohibited from doing under the Sections of this Canon;
(c) except to the extent permitted by Section 7C(1), shall not authorize or knowingly permit any other person to do for the candidate what the candidate is prohibited from doing under the Sections of this Canon;
(d) shall not:
(i) make pledges or promises of conduct in office other than the faithful and impartial performance of the duties of the office;
(ii) make statements that commit or appear to commit the candidate with respect to cases, controversies or issues that are likely to come before the court; or
(iii) knowingly misrepresent the identity, qualifications, present position or other fact concerning the candidate or an opponent;
(e) may respond to personal attacks or attacks on the candidate's record as long as the response does not violate Section 7A(3)(d).
B. Candidates Seeking Appointment to Judicial or Other Governmental Office.
(1) A candidate for appointment to judicial office or a judge seeking other governmental office shall not solicit or accept funds, personally or through a committee or otherwise, to support his or her candidacy.
(2) A candidate for appointment to judicial office or a judge seeking other governmental office shall not engage in any political activity to secure the appointment except that:
(a) such persons may:
(i) communicate with the appointing authority, including any selection or nominating commission or other agency designated to screen candidates;
(ii) seek support or endorsement for the appointment from organizations that regularly make recommendations for reappointment or appointment to the office, and from individuals; and
(iii) provide to those specified in Sections 7B(2)(a)(i) and 7B(2)(a)(ii) information as to his or her qualifications for the office;
(b) a non-judge candidate for appointment to judicial office may, in addition, unless otherwise prohibited by law:
(i) retain an office in a political organization,
(ii) attend political gatherings, and
(iii) continue to pay ordinary assessments and ordinary contributions to a political organization or candidate and purchase tickets for political party dinners or other functions.
C. Judges and Candidates Subject to Public Election.
(1) A candidate, including an incumbent judge, for a judicial office that is filled by public election between competing candidates shall not personally solicit campaign funds, or solicit attorneys for publicly stated support, but may establish committees of responsible *1060 persons to secure and manage the expenditure of funds for the candidate's campaign and to obtain public statements of support for his or her candidacy. Such committees are not prohibited from soliciting campaign contributions and public support from any person or corporation authorized by law. A candidate should not expend funds in furtherance of his or her judicial campaign or establish a committee to solicit contributions or public support earlier than one year before the general election. A candidate shall not use or permit the use of campaign contributions for the private benefit of the candidate or members of the candidate's family.
(2) A candidate for merit retention in office may conduct only limited campaign activities until such time as the judge certifies that the judge's candidacy has drawn active opposition. Limited campaign activities shall only include the conduct authorized by subsection C(1), interviews with reporters and editors of the print, audio and visual media, and appearances and speaking engagements before public gatherings and organizations. Upon mailing a certificate in writing to the Secretary of State, Division of Elections, with a copy to the Judicial Qualifications Commission, that the judge's candidacy has drawn active opposition, and specifying the nature thereof, a judge may thereafter campaign in any manner authorized by law, subject to the restrictions of subsection A(3).
(3) After qualifying for judicial office with the appropriate qualifying officer, a judicial candidate involved in an election or re-election, or a merit retention candidate who has certified that he or she has active opposition, may attend a political party function to speak in behalf of his or her candidacy or on a matter that relates to the law, the improvement of the legal system, or the administration of justice. The function must not be a fund raiser, and the invitation to speak must also include the other candidates, if any, for that office. The candidate should refrain from commenting on the candidate's affiliation with any political party or other candidate, and should avoid expressing a position on any political issue. A judicial candidate attending a political party function must avoid conduct that suggests or appears to suggest support of or opposition to a political party, a political issue, or another candidate. Conduct limited to that described above does not constitute participation in a partisan political party activity.
D. Incumbent Judges. A judge shall not engage in any political activity except (i) as authorized under any other Section of this Code, (ii) on behalf of measures to improve the law, the legal system or the administration of justice, or (iii) as expressly authorized by law.
E. Applicability. Canon 7 generally applies to all incumbent judges and judicial candidates. A successful candidate, whether or not an incumbent, is subject to judicial discipline for his or her campaign conduct; an unsuccessful candidate who is a lawyer is subject to lawyer discipline for his or her campaign conduct. A lawyer who is a candidate for judicial office is subject to Rule 4-8.2(b) of the Rules Regulating The Florida Bar.

COMMENTARY
Canon 7A(1). A judge or candidate for judicial office retains the right to participate in the political process as a voter.
Where false information concerning a judicial candidate is made public, a judge or another judicial candidate having knowledge of the facts is not prohibited by Section 7A(1) from making the facts public.
Section 7A(1)(a) does not prohibit a candidate for elective judicial office from retaining during candidacy a public office such as county prosecutor, which is not "an office in a political organization."
Section 7A(1)(b) does not prohibit a judge or judicial candidate from privately expressing his or her views on judicial candidates or other candidates for public office.
A candidate does not publicly endorse another candidate for public office by having that candidate's name on the same ticket.
Canon 7A(3)(a). Although a judicial candidate must encourage members of his or her family to adhere to the same standards of political conduct in support of the candidate that apply to the candidate, family members *1061 are free to participate in other political activity.
Canon 7A(3)(d). Section 7A(3)(d) prohibits a candidate for judicial office from making statements that appear to commit the candidate regarding cases, controversies or issues likely to come before the court. As a corollary, a candidate should emphasize in any public statement the candidate's duty to uphold the law regardless of his or her personal views. See also Section 3B(9), the general rule on public comment by judges. Section 7A(3)(d) does not prohibit a candidate from making pledges or promises respecting improvements in court administration. Nor does this Section prohibit an incumbent judge from making private statements to other judges or court personnel in the performance of judicial duties. This Section applies to any statement made in the process of securing judicial office, such as statements to commissions charged with judicial selection and tenure and legislative bodies confirming appointment.
Canon 7B(2). Section 7B(2) provides a limited exception to the restrictions imposed by Sections 7A(1) and 7D. Under Section 7B(2), candidates seeking reappointment to the same judicial office or appointment to another judicial office or other governmental office may apply for the appointment and seek appropriate support.
Although under Section 7B(2) non-judge candidates seeking appointment to judicial office are permitted during candidacy to retain office in a political organization, attend political gatherings and pay ordinary dues and assessments, they remain subject to other provisions of this Code during candidacy. See Sections 7B(1), 7B(2)(a), 7E and Application Section.
Canon 7C. Although Chapter 106, Florida Statutes, does not address when campaign accounts may be established or campaign solicitations may begin, the time limitation in Section 7C(1) is consistent with the goals of the canons in maintaining the integrity of the judiciary.
The term "limited campaign activities" is not intended to permit the use of common forms of campaign advertisement which include, but are not limited to, billboards, bumperstickers, media commercials, newspaper advertisements, signs, etc. Informational brochures about the merit retention system, the law, the legal system or the administration of justice, and neutral, factual biographical sketches of the candidates do not violate this provision.
Active opposition is difficult to define but is intended to include any form of organized public opposition or an unfavorable vote on a bar poll. Any political activity engaged in by members of a judge's family should be conducted in the name of the individual family member, entirely independent of the judge and without reference to the judge or to the judge's office.
Canon 7D. Neither Section 7D nor any other section of the Code prohibits a judge in the exercise of administrative functions from engaging in planning and other official activities with members of the executive and legislative branches of government. With respect to a judge's activity on behalf of measures to improve the law, the legal system and the administration of justice, see Commentary to Section 4B and Section 4C and its Commentary.

APPLICATION OF THE CODE OF JUDICIAL CONDUCT
This Code applies to justices of the Supreme Court and judges of the District Courts of Appeal, Circuit Courts, and County Courts.
Anyone, whether or not a lawyer, who performs judicial functions, including but not limited to a magistrate, court commissioner, special master, general master, domestic relations commissioner, child support hearing officer, or judge of compensation claims, shall, while performing judicial functions, conform with Canons 1, 2A, and 3, and such other provisions of this Code that might reasonably be applicable depending on the nature of the judicial function performed.
Any judge responsible for a person who performs a judicial function should require compliance with the applicable provisions of this Code.
*1062 If the hiring or appointing authority for persons who perform a judicial function is not a judge then that authority should adopt the applicable provisions of this Code.

A. Traffic Magistrate
A traffic magistrate:
(1) is not required to comply with Section 5C(2), 5D(2) and (3), 5E, 5F, and 5G, and Section 6B and 6C.
(2) should not practice law in the civil or criminal traffic court in any county in which the magistrate presides.

B. Retired/Senior Judge
A judge who has retired from judicial service and who has complied with the procedures established by the Supreme Court of Florida so as to be eligible for recall to judicial service should comply with all the provisions of this Code except Sections 5C(2), 5E, 5F, and 6A. A retired judge who is subject to recall shall not practice law and shall refrain from accepting any assignment in any cause in which the judge's present financial business dealings, investments, or other extra-judicial activities might be directly or indirectly affected. A retired judge who is subject to recall may serve as a mediator, may place his or her name on the mediator master list maintained by the chief judge, and may be associated with entities that are solely engaged in offering mediation or other alternative dispute resolution services but that are not otherwise engaged in the practice of law. However, such judge may in no other way advertise, solicit business, associate with a law firm, or participate in any other activity that directly or indirectly promotes his or her mediation services. A retired judge assigned to adjudicate a case shall disclose any negotiations or agreements for the provision of mediation services between the judge and any of the parties or counsel to the case. The purpose of these admonitions is to ensure that the judge's impartiality is not subject to question.
If a retired justice or judge does not desire to be assigned to judicial service, such justice or judge who is a member of The Florida Bar may engage in the practice of law and still be entitled to receive retirement compensation. The justice or judge shall then be entitled to all the rights of an attorney-at-law and no longer be subject to this Code.

COMMENTARY
Section A. Please see In re Florida Rules of Practice and Procedure for Traffic Courts  Civil Traffic Infraction Hearing Officer Pilot Program, 559 So.2d 1101 (Fla. 1990), regarding traffic magistrates.
Section B. Although a retired judge subject to recall may act as a mediator or arbitrator, attention must be given to relationships with lawyers and law firms which may require disclosure or disqualification. See Canon 5D(1). This provision is intended to prohibit a senior judge from soliciting lawyers to use his or her mediation services when those lawyers are or may be before the judge in proceedings where the senior judge is acting in a judicial capacity. If a senior judge is rendering mediation services for compensation in civil personal injury matters, he or she should not accept a judicial assignment for that type of case in the same court where the senior judge is mediating those cases. On the other hand, the senior judge could be assigned judicial duties in other jurisdictions of that same court, e.g., criminal, family law, or probate matters, or be assigned as a senior judge in other geographic areas in which the judge does not conduct mediation proceedings.

EFFECTIVE DATE OF COMPLIANCE
A person to whom this Code becomes applicable shall comply immediately with all provisions of this Code except Sections 5D(2), 5D(3) and 5E and shall comply with these Sections as soon as reasonably possible and shall do so in any event within the period of one year.

COMMENTARY
If serving as a fiduciary when selected as judge, a new judge may, notwithstanding the prohibitions in Section 5E, continue to serve as fiduciary but only for that period of time necessary to avoid serious adverse consequences *1063 to the beneficiary of the fiduciary relationship and in no event longer than one year. Similarly, if engaged at the time of judicial selection in a business activity, a new judge may, notwithstanding the prohibitions in Section 5D(3), continue in that activity for a reasonable period but in no event longer than one year.
NOTES
[1] See In re Code of Judicial Conduct Status of Judges' Spouses, 336 So.2d 584 (Fla. 1976); In re Canon 7C, Code of Judicial Conduct, 347 So.2d 420 (Fla. 1977); In re Code of Judicial Conduct (Financial Disclosure), 348 So.2d 891 (Fla. 1977); In re Code of Judicial Conduct, 367 So.2d 221 (Fla. 1979); In re Petition of Post-Newsweek Stations, Florida, Inc., for Change in Code of Judicial Conduct, 370 So.2d 764 (Fla. 1979); In re Petition to Amend Code of Judicial Conduct (Merit Retention Election), 414 So.2d 508 (Fla. 1982); In re Code of Judicial Conduct Amendment to Canon 5C(2) (Investments), 463 So.2d 1132 (Fla. 1985); In re Code of Judicial Conduct, Canon 6C(1), 506 So.2d 1039 (Fla. 1987).
[2] HALE'S RULES FOR HIS JUDICIAL GUIDANCE
Things Necessary To Be Continually Had In Remembrance
1. That in the administration of justice I am entrusted for God, the king of the country; and therefore,
2. That it be done, 1st, uprightly; 2ndly, deliberately; 3rdly, resolutely.
3. That I rest not upon my own understanding or strength, but implore and rest upon the direction and strength of God.
4. That in the execution of justice I carefully lay aside my own passions, and do not give way to them, however provoked.
5. That I be wholly intent upon the business I am about, remitting all other cares and thoughts as unseasonable, and interruptions.
6. That I suffer not myself to be prepossessed with any judgment at all, till the whole business and both parties be heard.
7. That I never engage myself in the beginning of a cause, but reserve myself unprejudiced till the whole be heard.
8. That in business capital, though my nature prompt me to pity, yet to consider that there is also pity due to the country.
9. That I be not too rigid in matters purely conscientious, where all the harm is diversity of judgment.
10. That I be not biased with compassion to the poor or favor to the rich, in point of justice.
11. That popular or court applause, or distaste, have no influence upon any thing I do in point of distribution of justice.
12. Not be solicitous what men will say or think, so long as I keep myself exactly according to the rules of justice.
13. If in criminals it be measuring cast, to incline to mercy and acquittal.
14. In criminals, that consist merely in words when no more harm ensues, moderation is no injustice.
15. In criminals of blood, if the fact be evident, severity is justice.
16. To abhor all private solicitations, of what kind soever, and by whomever, in matters depending.
17. To charge my servants; 1st, not to interpose in any business whatsoever; 2d, not to take more than their known fees; 3rd, not to give any undue precedence to causes; 4th, not to recommend counsel.
18. To be short and sparing at meals, that I may be fitter for business.
[3] Because the proposed Code so closely follows the Model Code, additional information on the intent and purpose of the proposed code provisions can be found in Lisa L. Milford, American Bar Ass'n, The Development of the ABA Judicial Code (1992), published by the Center for Professional Responsibility of the American Bar Association.

We have not adopted the format of the Model Code but have instead elected to use the format of the Code of Conduct for United States Judges. We find that this format provides improved readability.