918 So.2d 949 (2006)
In re AMENDMENT TO CODE OF JUDICIAL CONDUCT-AMERICAN BAR ASSOCIATION'S MODEL CODE OF JUDICIAL CONDUCT.
No. SC05-281.
Supreme Court of Florida.
January 5, 2006.
Honorable Richard R. Townsend, Chair, Florida Supreme Court Judicial Ethics Advisory Committee, Fourth Judicial Circuit, Green Cove Springs, FL, and Marjorie Gadarian Graham, Vice-Chair, Florida Supreme Court Judicial Ethics Advisory Committee, Palm Beach Gardens, FL, for Petitioner.
PER CURIAM.
The Judicial Ethics Advisory Committee petitions this Court to consider amendments to the Florida Code of Judicial Conduct. We have jurisdiction. See art. V, § 2(a), Fla. Const.
By letter dated June 4, 2004, the Court requested that the Judicial Ethics Advisory Committee (Committee) study the 2003 revisions to the American Bar Association's Model Code of Judicial Conduct and recommend any appropriate amendments to the Florida Code of Judicial Conduct.[1] The Committee's report was filed on January 31, 2005, and recommended several amendments. The main purpose of the amendments is to conform the provisions of the Florida Code to the corresponding provisions of the Model Code. Specifically, the Committee proposed amendments to the "Application" and "Definition" sections of the Code, to the Commentary to Canons 2 and 3 C(4), and to Canons 3 B, 3 E, and 7 A.[2] The proposed amendments were published for public comment in the April 15, 2005, edition of The Florida Bar News. No comments were received.
Upon consideration of the Committee's report, we hereby amend the Florida Code of Judicial conduct as reflected in the appendix to this opinion. New language is indicated by underlining, and deletions are indicated by struck-through type. The amendments are effective immediately.
It is so ordered.
PARIENTE, C.J., and WELLS, ANSTEAD, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.

APPENDIX

Definitions
"Appropriate authority" denotes the authority with responsibility for initiation of disciplinary process with respect to the violation to be reported.
"Candidate." A candidate is a person seeking selection for or retention in judicial office by election or appointment. A person becomes a candidate for judicial office as soon as he or she makes a public *950 announcement of candidacy, opens a campaign account as defined by Florida law, declares or files as a candidate with the election or appointment authority, or authorizes solicitation or acceptance of contributions or support. The term "candidate" has the same meaning when applied to a judge seeking election or appointment to nonjudicial office.
"Court personnel" does not include the lawyers in a proceeding before a judge.
"De minimis" denotes an insignificant interest that could not raise reasonable question as to a judge's impartiality.
"Economic interest" denotes ownership of a more than de minimis legal or equitable interest, or a relationship as officer, director, advisor, or other active participant in the affairs of a party, except that:
(i) ownership of an interest in a mutual or common investment fund that holds securities is not an economic interest in such securities unless the judge participates in the management of the fund or a proceeding pending or impending before the judge could substantially affect the value of the interest;
(ii) service by a judge as an officer, director, advisor, or other active participant in an educational, religious, charitable, fraternal, sororal, or civic organization, or service by a judge's spouse, parent, or child as an officer, director, advisor, or other active participant in any organization does not create an economic interest in securities held by that organization;
(iii) a deposit in a financial institution, the proprietary interest of a policy holder in a mutual insurance company, of a depositor in a mutual savings association, or of a member in a credit union, or a similar proprietary interest, is not an economic interest in the organization unless a proceeding pending or impending before the judge could substantially affect the value of the interest;
(iv) ownership of government securities is not an economic interest in the issuer unless a proceeding pending or impending before the judge could substantially affect the value of the securities.
"Fiduciary" includes such relationships as personal representative, administrator, trustee, guardian, and attorney in fact.
"Impartiality" or "impartial" denotes absence of bias or prejudice in favor of, or against, particular parties or classes of parties, as well as maintaining an open mind in considering issues that may come before the judge.
"Judge." When used herein this term means Article V, Florida Constitution judges and, where applicable, those persons performing judicial functions under the direction or supervision of an Article V judge.
"Knowingly," "knowledge," "known," or "knows" denotes actual knowledge of the fact in question. A person's knowledge may be inferred from circumstances.
"Law" denotes court rules as well as statutes, constitutional provisions, and decisional law.
"Member of the candidate's family" denotes a spouse, child, grandchild, parent, grandparent, or other relative or person with whom the candidate maintains a close familial relationship.
"Member of the judge's family" denotes a spouse, child, grandchild, parent, grandparent, or other relative or person with whom the judge maintains a close familial relationship.
"Member of the judge's family residing in the judge's household" denotes any relative of a judge by blood or marriage, or a person treated by a judge as a member of *951 the judge's family, who resides in the judge's household.
"Nonpublic information" denotes information that, by law, is not available to the public. Nonpublic information may include but is not limited to: information that is sealed by statute or court order, impounded or communicated in camera; and information offered in grand jury proceedings, presentencing reports, dependency cases, or psychiatric reports.
"Political organization" denotes a political party or other group, the principal purpose of which is to further the election or appointment of candidates to political office.
"Public election." This term includes primary and general elections; it includes partisan elections, nonpartisan elections, and retention elections.
"Require." The rules prescribing that a judge "require" certain conduct of others are, like all of the rules in this Code, rules of reason. The use of the term "require" in that context means a judge is to exercise reasonable direction and control over the conduct of those persons subject to the judge's direction and control.
"Third degree of relationship." The following persons are relatives within the third degree of relationship: great-grandparent, grandparent, parent, uncle, aunt, brother, sister, child, grandchild, great-grandchild, nephew, or niece.
CANON 1. A Judge Shall Uphold the Integrity and Independence of the Judiciary
An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed and applied to further that objective.

COMMENTARY
Deference to the judgments and rulings of courts depends upon public confidence in the integrity and independence of judges. The integrity and independence of judges depend in turn upon their acting without fear or favor. Although judges should be independent, they must comply with the law, including the provisions of this Code. Public confidence in the impartiality of the judiciary is maintained by the adherence of each judge to this responsibility. Conversely, violation of this Code diminishes public confidence in the judiciary and thereby does injury to the system of government under law.
CANON 2. A Judge Shall Avoid Impropriety and the Appearance of Impropriety in all of the Judge's Activities
A. A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
B. A judge shall not allow family, social, political or other relationships to influence the judge's judicial conduct or judgment. A judge shall not lend the prestige of judicial office to advance the private interests of the judge or others; nor shall a judge convey or permit others to convey the impression that they are in a special position to influence the judge. A judge shall not testify voluntarily as a character witness.
C. A judge should not hold membership in an organization that practices invidious discrimination on the basis of race, sex, religion, or national origin. Membership in a fraternal, sororal, religious, or ethnic heritage organization shall not be deemed to be a violation of this provision.

*952 COMMENTARY
Canon 2A. Irresponsible or improper conduct by judges erodes public confidence in the judiciary. A judge must avoid all impropriety and appearance of impropriety. A judge must expect to be the subject of constant public scrutiny. A judge must therefore accept restrictions on the judge's conduct that might be viewed as burdensome by the ordinary citizen and should do so freely and willingly. Examples are the restrictions on judicial speech imposed by Sections 3B(9) and (10) that are indispensable to the maintenance of the integrity, impartiality, and independence of the judiciary.
The prohibition against behaving with impropriety or the appearance of impropriety applies to both the professional and personal conduct of a judge. Because it is not practicable to list all prohibited acts, the proscription is necessarily cast in general terms that extend to conduct by judges that is harmful although not specifically mentioned in the Code. Actual improprieties under this standard include violations of law, court rules, or other specific provisions of this Code. The test for appearance of impropriety is whether the conduct would create in reasonable minds, with knowledge of all the relevant circumstances that a reasonable inquiry would disclose, a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality, and competence is impaired.
See also Commentary under Section 2C.
Canon 2B. Maintaining the prestige of judicial office is essential to a system of government in which the judiciary functions independently of the executive and legislative branches. Respect for the judicial office facilitates the orderly conduct of legitimate judicial functions. Judges should distinguish between proper and improper use of the prestige of office in all of their activities. For example, it would be improper for a judge to allude to his or her judgeship to gain a personal advantage such as deferential treatment when stopped by a police officer for a traffic offense. Similarly, judicial letterhead must not be used for conducting a judge's personal business, although a judge may use judicial letterhead to write character reference letters when such letters are otherwise permitted under this Code.
A judge must avoid lending the prestige of judicial office for the advancement of the private interests of others. For example, a judge must not use the judge's judicial position to gain advantage in a civil suit involving a member of the judge's family. In contracts for publication of a judge's writings, a judge should retain control over the advertising to avoid exploitation of the judge's office. As to the acceptance of awards, see Section 5D(5) and Commentary.
Although a judge should be sensitive to possible abuse of the prestige of office, a judge may, based on the judge's personal knowledge, serve as a reference or provide a letter of recommendation. However, a judge must not initiate the communication of information to a sentencing judge or a probation or corrections officer but may provide to such persons information for the record in response to a formal request.
Judges may participate in the process of judicial selection by cooperating with appointing authorities and screening committees seeking names for consideration, and by responding to official inquiries concerning a person being considered for a judgeship. See also Canon 7 regarding use of a judge's name in political activities.
A judge must not testify voluntarily as a character witness because to do so may lend the prestige of the judicial office in support of the party for whom the judge *953 testifies. Moreover, when a judge testifies as a witness, a lawyer who regularly appears before the judge may be placed in the awkward position of cross-examining the judge. A judge may, however, testify when properly summoned. Except in unusual circumstances where the demands of justice require, a judge should discourage a party from requiring the judge to testify as a character witness.
Canon 2C. Florida Canon 2C is derived from a recommendation by the American Bar Association and from the United States Senate Committee Resolution, 101st Congress, Second Session, as adopted by the United States Senate Judiciary Committee on August 2, 1990.
Membership of a judge in an organization that practices invidious discrimination gives rise to perceptions that the judge's impartiality is impaired. Whether an organization practices invidious discrimination is often a complex question to which judges should be sensitive. The answer cannot be determined from a mere examination of an organization's current membership rolls but rather depends on the history of the organization's selection of members and other relevant factors, such as that the organization is dedicated to the preservation of religious, ethnic, or cultural values of legitimate common interest to its members, or that it is in fact and effect an intimate, purely private organization whose membership limitations could not be constitutionally prohibited. See New York State Club Ass'n. Inc. v. City of New York, 487 U.S. 1, 108 S.Ct. 2225, 101 L.Ed.2d 1 (1988); Board of Directors of Rotary International v. Rotary Club of Duarte, 481 U.S. 537, 107 S.Ct. 1940, 95 L.Ed.2d 474 (1987); Roberts v. United States Jaycees, 468 U.S. 609, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984). Other relevant factors include the size and nature of the organization and the diversity of persons in the locale who might reasonably be considered potential members. Thus the mere absence of diverse membership does not by itself demonstrate a violation unless reasonable persons with knowledge of all the relevant circumstances would expect that the membership would be diverse in the absence of invidious discrimination. Absent such factors, an organization is generally said to discriminate invidiously if it arbitrarily excludes from membership on the basis of race, religion, sex, or national origin persons who would otherwise be admitted to membership.
This Canon is not intended to prohibit membership in religious and ethnic clubs, such as Knights of Columbus, Masons, B'nai B'rith, and Sons of Italy; civic organizations, such as Rotary, Kiwanis, and The Junior League; young people's organizations, such as Boy Scouts, Girl Scouts, Boy's Clubs, and Girl's Clubs; and charitable organizations, such as United Way and Red Cross.
Although Section 2C relates only to membership in organizations that invidiously discriminate on the basis of race, sex, religion or national origin, a judge's membership in an organization that engages in any discriminatory membership practices prohibited by the law of the jurisdiction also violates Canon 2 and Section 2A and gives the appearance of impropriety. In addition, it would be a violation of Canon 2 and Section 2A for a judge to arrange a meeting at a club that the judge knows practices invidious discrimination on the basis of race, sex, religion or national origin in its membership or other policies, or for the judge to regularly use such a club. Moreover, public manifestation by a judge of the judge's knowing approval of invidious discrimination on any basis gives the appearance of impropriety under Canon 2 and diminishes public confidence in *954 the integrity and impartiality of the judiciary, in violation of Section 2A.
When a person who is a judge on the date this Code becomes effective learns that an organization to which the judge belongs engages in invidious discrimination that would preclude membership under Section 2C or under Canon 2 and Section 2A, the judge is permitted, in lieu of resigning, to make immediate efforts to have the organization discontinue its invidiously discriminatory practices, but is required to suspend participation in any other activities of the organization. If the organization fails to discontinue its invidiously discriminatory practices as promptly as possible (and in all events within a year of the judge's first learning of the practices), the judge is required to resign immediately from the organization.
CANON 3. A Judge Shall Perform the Duties of Judicial Office Impartially and Diligently

A. Judicial Duties in General.
The judicial duties of a judge take precedence over all the judge's other activities. The judge's judicial duties include all the duties of the judge's office prescribed by law. In the performance of these duties, the specific standards set forth in the following sections apply.

B. Adjudicative Responsibilities.
(1) A judge shall hear and decide matters assigned to the judge except those in which disqualification is required.
(2) A judge shall be faithful to the law and maintain professional competence in it. A judge shall not be swayed by partisan interests, public clamor, or fear of criticism.
(3) A judge shall require order and decorum in proceedings before the judge.
(4) A judge shall be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom the judge deals in an official capacity, and shall require similar conduct of lawyers, and of staff, court officials, and others subject to the judge's direction and control.
(5) A judge shall perform judicial duties without bias or prejudice. A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, including but not limited to bias or prejudice based upon race, sex, religion, national origin, disability, age, sexual orientation, or socioeconomic status, and shall not permit staff, court officials, and others subject to the judge's direction and control to do so. This section does not preclude the consideration of race, sex, religion, national origin, disability, age, sexual orientation, socioeconomic status, or other similar factors when they are issues in the proceeding.
(6) A judge shall require lawyers in proceedings before the judge to refrain from manifesting, by words, gestures, or other conduct, bias or prejudice based upon race, sex, religion, national origin, disability, age, sexual orientation, or socioeconomic status, against parties, witnesses, counsel, or others. This Section 3B(6) does not preclude legitimate advocacy when race, sex, religion, national origin, disability, age, sexual orientation, socioeconomic status, or other similar factors are issues in the proceeding.
(7) A judge shall accord to every person who has a legal interest in a proceeding, or that person's lawyer, the right to be heard according to law. A judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding except that:
*955 (a) Where circumstances require, ex parte communications for scheduling, administrative purposes, or emergencies that do not deal with substantive matters or issues on the merits are authorized, provided:
(i) the judge reasonably believes that no party will gain a procedural or tactical advantage as a result of the ex parte communication, and
(ii) the judge makes provision promptly to notify all other parties of the substance of the ex parte communication and allows an opportunity to respond.
(b) A judge may obtain the advice of a disinterested expert on the law applicable to a proceeding before the judge if the judge gives notice to the parties of the person consulted and the substance of the advice and affords the parties reasonable opportunity to respond.
(c) A judge may consult with other judges or with court personnel whose function is to aid the judge in carrying out the judge's adjudicative responsibilities.
(d) A judge may, with the consent of the parties, confer separately with the parties and their lawyers in an effort to mediate or settle matters pending before the judge.
(e) A judge may initiate or consider any ex parte communications when expressly authorized by law to do so.
(8) A judge shall dispose of all judicial matters promptly, efficiently, and fairly.
(9) A judge shall not, while a proceeding is pending or impending in any court, make any public comment that might reasonably be expected to affect its outcome or impair its fairness or make any nonpublic comment that might substantially interfere with a fair trial or hearing. The judge shall require similar abstention on the part of court personnel subject to the judge's direction and control. This Section does not prohibit judges from making public statements in the course of their official duties or from explaining for public information the procedures of the court. This Section does not apply to proceedings in which the judge is a litigant in a personal capacity.
(10) A judge shall not, with respect to parties or classes of parties, cases, controversies or issues likely to come before the court, make pledges, promises or commitments that are inconsistent with the impartial performance of the adjudicative duties of the office.
(10) (11) A judge shall not commend or criticize jurors for their verdict other than in a court order or opinion in a proceeding, but may express appreciation to jurors for their service to the judicial system and the community.
(11) (12) A judge shall not disclose or use, for any purpose unrelated to judicial duties, nonpublic information acquired in a judicial capacity.

C. Administrative Responsibilities.
(1) A judge shall diligently discharge the judge's administrative responsibilities without bias or prejudice and maintain professional competence in judicial administration, and should cooperate with other judges and court officials in the administration of court business.
(2) A judge shall require staff, court officials, and others subject to the judge's direction and control to observe the standards of fidelity and diligence that apply to the judge and to refrain from manifesting bias or prejudice in the performance of their official duties.
(3) A judge with supervisory authority for the judicial performance of other judges shall take reasonable measures to assure the prompt disposition of matters *956 before them and the proper performance of their other judicial responsibilities.
(4) A judge shall not make unnecessary appointments. A judge shall exercise the power of appointment impartially and on the basis of merit. A judge shall avoid nepotism and favoritism. A judge shall not approve compensation of appointees beyond the fair value of services rendered.

D. Disciplinary Responsibilities.
(1) A judge who receives information or has actual knowledge that substantial likelihood exists that another judge has committed a violation of this Code shall take appropriate action.
(2) A judge who receives information or has actual knowledge that substantial likelihood exists that a lawyer has committed a violation of the Rules Regulating The Florida Bar shall take appropriate action.
(3) Acts of a judge, in the discharge of disciplinary responsibilities, required or permitted by Sections 3D(1) and 3D(2) are part of a judge's judicial duties and shall be absolutely privileged, and no civil action predicated thereon may be instituted against the judge.

E. Disqualification.
(1) A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:
(a) the judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of disputed evidentiary facts concerning the proceeding;
(b) the judge served as a lawyer or was the lower court judge in the matter in controversy, or a lawyer with whom the judge previously practiced law served during such association as a lawyer concerning the matter, or the judge has been a material witness concerning it;
(c) the judge knows that he or she individually or as a fiduciary, or the judge's spouse, parent, or child wherever residing, or any other member of the judge's family residing in the judge's household has an economic interest in the subject matter in controversy or in a party to the proceeding or has any other more than de minimis interest that could be substantially affected by the proceeding;
(d) the judge or the judge's spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:
(i) is a party to the proceeding, or an officer, director, or trustee of a party;
(ii) is acting as a lawyer in the proceeding;
(iii) is known by the judge to have a more than de minimis interest that could be substantially affected by the proceeding;
(iv) is to the judge's knowledge likely to be a material witness in the proceeding;
(e) the judge's spouse or a person within the third degree of relationship to the judge participated as a lower court judge in a decision to be reviewed by the judge;
(f) the judge, while a judge or a candidate for judicial office, has made a public statement that commits, or appears to commit, the judge with respect to:
(i) parties or classes of parties in the proceeding;
(ii) an issue in the proceeding; or
(iii) the controversy in the proceeding.
(2) A judge should keep informed about the judge's personal and fiduciary economic interests, and make a reasonable effort to keep informed about the economic interests *957 of the judge's spouse and minor children residing in the judge's household.

F. Remittal of Disqualification.
A judge disqualified by the terms of Section 3E may disclose on the record the basis of the judge's disqualification and may ask the parties and their lawyers to consider, out of the presence of the judge, whether to waive disqualification. If following disclosure of any basis for disqualification other than personal bias or prejudice concerning a party, the parties and lawyers, without participation by the judge, all agree the judge should not be disqualified, and the judge is then willing to participate, the judge may participate in the proceeding. The agreement shall be incorporated in the record of the proceeding.

COMMENTARY
Canon 3B(4). The duty to hear all proceedings fairly and with patience is not inconsistent with the duty to dispose promptly of the business of the court. Judges can be efficient and business-like while being patient and deliberate.
Canon 3B(5). A judge must refrain from speech, gestures or other conduct that could reasonably be perceived as sexual harassment and must require the same standard of conduct of others subject to the judge's direction and control.
A judge must perform judicial duties impartially and fairly. A judge who manifests bias on any basis in a proceeding impairs the fairness of the proceeding and brings the judiciary into disrepute. Facial expression and body language, in addition to oral communication, can give to parties or lawyers in the proceeding, jurors, the media and others an appearance of judicial bias. A judge must be alert to avoid behavior that may be perceived as prejudicial.
Canon 3B(7). The proscription against communications concerning a proceeding includes communications from lawyers, law teachers, and other persons who are not participants in the proceeding, except to the limited extent permitted.
To the extent reasonably possible, all parties or their lawyers shall be included in communications with a judge.
Whenever presence of a party or notice to a party is required by Section 3B(7), it is the party's lawyer, or if the party is unrepresented, the party who is to be present or to whom notice is to be given.
An appropriate and often desirable procedure for a court to obtain the advice of a disinterested expert on legal issues is to invite the expert to file a brief as amicus curiae.
Certain ex parte communication is approved by Section 3B(7) to facilitate scheduling and other administrative purposes and to accommodate emergencies. In general, however, a judge must discourage ex parte communication and allow it only if all the criteria stated in Section 3B(7) are clearly met. A judge must disclose to all parties all ex parte communications described in Sections 3B(7)(a) and 3B(7)(b) regarding a proceeding pending or impending before the judge.
A judge must not independently investigate facts in a case and must consider only the evidence presented.
A judge may request a party to submit proposed findings of fact and conclusions of law, so long as the other parties are apprised of the request and are given an opportunity to respond to the proposed findings and conclusions.
A judge must make reasonable efforts, including the provision of appropriate supervision, *958 to ensure that Section 3B(7) is not violated through law clerks or other personnel on the judge's staff.
If communication between the trial judge and the appellate court with respect to a proceeding is permitted, a copy of any written communication or the substance of any oral communication should be provided to all parties.
Canon 3B(8). In disposing of matters promptly, efficiently, and fairly, a judge must demonstrate due regard for the rights of the parties to be heard and to have issues resolved without unnecessary cost or delay. Containing costs while preserving fundamental rights of parties also protects the interests of witnesses and the general public. A judge should monitor and supervise cases so as to reduce or eliminate dilatory practices, avoidable delays, and unnecessary costs. A judge should encourage and seek to facilitate settlement, but parties should not feel coerced into surrendering the right to have their controversy resolved by the courts.
Prompt disposition of the court's business requires a judge to devote adequate time to judicial duties, to be punctual in attending court and expeditious in determining matters under submission, and to insist that court officials, litigants, and their lawyers cooperate with the judge to that end.
Canon 3B(9) and 3B(10). Sections 3B(9) and (10) restrictions on judicial speech are essential to the maintenance of the integrity, impartiality, and independence of the judiciary. A pending proceeding is one that has begun but not yet reached final disposition. An impending proceeding is one that is anticipated but not yet begun. The requirement that judges abstain from public comment regarding a pending or impending proceeding continues during any appellate process and until final disposition. This Section does Sections 3B(9) and (10) do not prohibit a judge from commenting on proceedings in which the judge is a litigant in a personal capacity, but in cases such as a writ of mandamus where the judge is a litigant in an official capacity, the judge must not comment publicly. The conduct of lawyers relating to trial publicity is governed by Rule 4-3.6 of the Rules Regulating The Florida Bar.
Canon 3B(10). Commending or criticizing jurors for their verdict may imply a judicial expectation in future cases and may impair a juror's ability to be fair and impartial in a subsequent case.
Canon 3C(4). Appointees of a judge include assigned counsel, officials such as referees, commissioners, special magistrates masters, receivers, mediators, arbitrators, and guardians and personnel such as clerks, secretaries, and bailiffs. Consent by the parties to an appointment or an award of compensation does not relieve the judge of the obligation prescribed by Section 3C(4). See also Fla.Stat. § 112.3135 (1991).
Canon 3D. Appropriate action may include direct communication with the judge or lawyer who has committed the violation, other direct action if available, or reporting the violation to the appropriate authority or other agency. If the conduct is minor, the Canon allows a judge to address the problem solely by direct communication with the offender. A judge having knowledge, however, that another judge has committed a violation of this Code that raises a substantial question as to that other judge's fitness for office or has knowledge that a lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects, is *959 required under this Canon to inform the appropriate authority. While worded differently, this Code provision has the identical purpose as the related Model Code provisions.
Canon 3E(1). Under this rule, a judge is disqualified whenever the judge's impartiality might reasonably be questioned, regardless of whether any of the specific rules in Section 3E(1) apply. For example, if a judge were in the process of negotiating for employment with a law firm, the judge would be disqualified from any matters in which that law firm appeared, unless the disqualification was waived by the parties after disclosure by the judge.
A judge should disclose on the record information that the judge believes the parties or their lawyers might consider relevant to the question of disqualification, even if the judge believes there is no real basis for disqualification. The fact that the judge conveys this information does not automatically require the judge to be disqualified upon a request by either party, but the issue should be resolved on a case-by-case basis. Similarly, if a lawyer or party has previously filed a complaint against the judge with the Judicial Qualifications Commission, that the fact does not automatically require disqualification of the judge. Such disqualification should be on a case-by-case basis.
By decisional law, the rule of necessity may override the rule of disqualification. For example, a judge might be required to participate in judicial review of a judicial salary statute, or might be the only judge available in a matter requiring immediate judicial action, such as a hearing on probable cause or a temporary restraining order. In the latter case, the judge must disclose on the record the basis for possible disqualification and use reasonable efforts to transfer the matter to another judge as soon as practicable.
Canon 3E(1)(b). A lawyer in a government agency does not ordinarily have an association with other lawyers employed by that agency within the meaning of Section 3E(1)(b); a judge formerly employed by a government agency, however, should disqualify himself or herself in a proceeding if the judge's impartiality might reasonably be questioned because of such association.
Canon 3E(1)(d). The fact that a lawyer in a proceeding is affiliated with a law firm with which a relative of the judge is affiliated does not of itself disqualify the judge. Under appropriate circumstances, the fact that "the judge's impartiality might reasonably be questioned" under Section 3E(1), or that the relative is known by the judge to have an interest in the law firm that could be "substantially affected by the outcome of the proceeding" under Section 3E(1)(d)(iii) may require the judge's disqualification.
Canon 3E(1)(e). It is not uncommon for a judge's spouse or a person within the third degree of relationship to a judge to also serve as a judge in either the trial or appellate courts. However, where a judge exercises appellate authority over another judge, and that other judge is either a spouse or a relationship within the third degree, then this Code requires disqualification of the judge that is exercising appellate authority. This Code, under these circumstances, precludes the appellate judge from participating in the review of the spouse's or relation's case.
Canon 3F. A remittal procedure provides the parties an opportunity to proceed without delay if they wish to waive the disqualification. To assure that consideration of the question of remittal is made independently of the judge, a judge must not solicit, seek, or hear comment on possible *960 remittal or waiver of the disqualification unless the lawyers jointly propose remittal after consultation as provided in the rule. A party may act through counsel if counsel represents on the record that the party has been consulted and consents. As a practical matter, a judge may wish to have all parties and their lawyers sign the remittal agreement.
CANON 4. A Judge is Encouraged to Engage in Activities to Improve the Law, the Legal System, and the Administration of Justice
A.D. [no change]
CANON 5. A Judge Shall Regulate Extrajudicial Activities to Minimize the Risk of Conflict with Judicial Duties
A.G. [no change]
CANON 6. Fiscal Matters of a Judge Shall be Conducted in a Manner That Does Not Give the Appearance of Influence or Impropriety; a Judge Shall Regularly File Public Reports as Required by Article II, Section 8, of the Constitution of Florida, and Shall Publicly Report Gifts; Additional Financial Information Shall be Filed With the Judicial Qualifications Commission to Ensure Full Financial Disclosure
A.D. [no change]
CANON 7. A Judge or Candidate for Judicial Office Shall Refrain From Inappropriate Political Activity

A. All judges and Candidates.
(1) Except as authorized in Sections 7B(2), 7C(2) and 7C(3), a judge or a candidate for election or appointment to judicial office shall not:
(a) act as a leader or hold an office in a political organization;
(b) publicly endorse or publicly oppose another candidate for public office;
(c) make speeches on behalf of a political organization;
(d) attend political party functions; or
(e) solicit funds for, pay an assessment to or make a contribution to a political organization or candidate, or purchase tickets for political party dinners or other functions.
(2) A judge shall resign from judicial office upon becoming a candidate for a non-judicial office either in a primary or in a general election, except that the judge may continue to hold judicial office while being a candidate for election to or serving as a delegate in a state constitutional convention if the judge is otherwise permitted by law to do so.
(3) A candidate for a judicial office:
(a) shall maintain the dignity appropriate to judicial office and act in a manner consistent with the impartiality, integrity, and independence of the judiciary, and shall encourage members of the candidate's family to adhere to the same standards of political conduct in support of the candidate as apply to the candidate;
(b) shall prohibit employees and officials who serve at the pleasure of the candidate, and shall discourage other employees and officials subject to the candidate's direction and control from doing on the candidate's behalf what the candidate is prohibited from doing under the Sections of this Canon;
(c) except to the extent permitted by Section 7C(1), shall not authorize or knowingly permit any other person to do for the candidate what the candidate is prohibited from doing under the Sections of this Canon;
(d) shall not:
(i) with respect to parties or classes of parties, cases, controversies, or issues that are likely to come before the court, *961 make pledges, or promises, or commitments of conduct in office other than that are inconsistent with the faithful and impartial performance of the adjudicative duties of the office; or
(ii) make statements that commit or appear to commit the candidate with respect to cases, controversies or issues that are likely to come before the court; or
(iii) (ii) knowingly misrepresent the identity, qualifications, present position or other fact concerning the candidate or an opponent;
(iv) (iii) while a proceeding is pending or impending in any court, make any public comment that might reasonably be expected to affect its outcome or impair its fairness or make any nonpublic comment that might substantially interfere with a fair trial or hearing. This section does not apply to proceedings in which the judicial candidate is a litigant in a personal capacity.
(e) may respond to personal attacks or attacks on the candidate's record as long as the response does not violate Section 7A(3)(d).

B. Candidates Seeking Appointment to Judicial or Other Governmental Office.
(1) A candidate for appointment to judicial office or a judge seeking other governmental office shall not solicit or accept funds, personally or through a committee or otherwise, to support his or her candidacy.
(2) A candidate for appointment to judicial office or a judge seeking other governmental office shall not engage in any political activity to secure the appointment except that:
(a) such persons may:
(i) communicate with the appointing authority, including any selection or nominating commission or other agency designated to screen candidates;
(ii) seek support or endorsement for the appointment from organizations that regularly make recommendations for reappointment or appointment to the office, and from individuals; and
(iii) provide to those specified in Sections 7B(2)(a)(i) and 7B(2)(a)(ii) information as to his or her qualifications for the office;
(b) a non-judge candidate for appointment to judicial office may, in addition, unless otherwise prohibited by law:
(i) retain an office in a political organization,
(ii) attend political gatherings, and
(iii) continue to pay ordinary assessments and ordinary contributions to a political organization or candidate and purchase tickets for political party dinners or other functions.

C. Judges and Candidates Subject to Public Election.
(1) A candidate, including an incumbent judge, for a judicial office that is filled by public election between competing candidates shall not personally solicit campaign funds, or solicit attorneys for publicly stated support, but may establish committees of responsible persons to secure and manage the expenditure of funds for the candidate's campaign and to obtain public statements of support for his or her candidacy. Such committees are not prohibited from soliciting campaign contributions and public support from any person or corporation authorized by law. A candidate shall not use or permit the use of campaign contributions for the private benefit of the candidate or members of the candidate's family.
*962 (2) A candidate for merit retention in office may conduct only limited campaign activities until such time as the judge certifies that the judge's candidacy has drawn active opposition. Limited campaign activities shall only include the conduct authorized by subsection C(1), interviews with reporters and editors of the print, audio and visual media, and appearances and speaking engagements before public gatherings and organizations. Upon mailing a certificate in writing to the Secretary of State, Division of Elections, with a copy to the Judicial Qualifications Commission, that the judge's candidacy has drawn active opposition, and specifying the nature thereof, a judge may thereafter campaign in any manner authorized by law, subject to the restrictions of subsection A(3).
(3) A judicial candidate involved in an election or re-election, or a merit retention candidate who has certified that he or she has active opposition, may attend a political party function to speak in behalf of his or her candidacy or on a matter that relates to the law, the improvement of the legal system, or the administration of justice. The function must not be a fund raiser, and the invitation to speak must also include the other candidates, if any, for that office. The candidate should refrain from commenting on the candidate's affiliation with any political party or other candidate, and should avoid expressing a position on any political issue. A judicial candidate attending a political party function must avoid conduct that suggests or appears to suggest support of or opposition to a political party, a political issue, or another candidate. Conduct limited to that described above does not constitute participation in a partisan political party activity.
D. Incumbent Judges. A judge shall not engage in any political activity except (i) as authorized under any other Section of this Code, (ii) on behalf of measures to improve the law, the legal system or the administration of justice, or (iii) as expressly authorized by law.
E. Applicability. Canon 7 generally applies to all incumbent judges and judicial candidates. A successful candidate, whether or not an incumbent, is subject to judicial discipline for his or her campaign conduct; an unsuccessful candidate who is a lawyer is subject to lawyer discipline for his or her campaign conduct. A lawyer who is a candidate for judicial office is subject to Rule 4-8.2(b) of the Rules Regulating The Florida Bar.
F. Statement of Candidate for Judicial Office. Each candidate for a judicial office, including an incumbent judge, shall file a statement with the qualifying officer within 10 days after filing the appointment of campaign treasurer and designation of campaign depository, stating that the candidate has read and understands the requirements of the Florida Code of Judicial Conduct. Such statement shall be in substantially the following form:
STATEMENT OF CANDIDATE FOR JUDICIAL OFFICE
I, ________________________, the judicial candidate, have received, have read, and understand the requirements of the Florida Code of Judicial Conduct.
___ Signature of Candidate ___
___ Date ___

COMMENTARY
Canon 7A(1). A judge or candidate for judicial office retains the right to participate in the political process as a voter.
Where false information concerning a judicial candidate is made public, a judge or another judicial candidate having knowledge of the facts is not prohibited by Section 7A(1) from making the facts public.
*963 Section 7A(1)(a) does not prohibit a candidate for elective judicial office from retaining during candidacy a public office such as county prosecutor, which is not "an office in a political organization."
Section 7A(1)(b) does not prohibit a judge or judicial candidate from privately expressing his or her views on judicial candidates or other candidates for public office.
A candidate does not publicly endorse another candidate for public office by having that candidate's name on the same ticket.
Canon 7A(3)(a). Although a judicial candidate must encourage members of his or her family to adhere to the same standards of political conduct in support of the candidate that apply to the candidate, family members are free to participate in other political activity.
Canon 7A(3)(d). Section 7A(3)(d) prohibits a candidate for judicial office from making statements that appear to commit the candidate regarding cases, controversies or issues likely to come before the court. As a corollary, a candidate should emphasize in any public statement the candidate's duty to uphold the law regardless of his or her personal views. Section 7A(3)(d) does not prohibit a candidate from making pledges or promises respecting improvements in court administration. Nor does this Section prohibit an incumbent judge from making private statements to other judges or court personnel in the performance of judicial duties. This Section applies to any statement made in the process of securing judicial office, such as statements to commissions charged with judicial selection and tenure and legislative bodies confirming appointment.
Canon 7B(2). Section 7B(2) provides a limited exception to the restrictions imposed by Sections 7A(1) and 7D. Under Section 7B(2), candidates seeking reappointment to the same judicial office or appointment to another judicial office or other governmental office may apply for the appointment and seek appropriate support.
Although under Section 7B(2) non-judge candidates seeking appointment to judicial office are permitted during candidacy to retain office in a political organization, attend political gatherings and pay ordinary dues and assessments, they remain subject to other provisions of this Code during candidacy. See Sections 7B(1), 7B(2)(a), 7E and Application Section.
Canon 7C. The term "limited campaign activities" is not intended to permit the use of common forms of campaign advertisement which include, but are not limited to, billboards, bumperstickers, media commercials, newspaper advertisements, signs, etc. Informational brochures about the merit retention system, the law, the legal system or the administration of justice, and neutral, factual biographical sketches of the candidates do not violate this provision.
Active opposition is difficult to define but is intended to include any form of organized public opposition or an unfavorable vote on a bar poll. Any political activity engaged in by members of a judge's family should be conducted in the name of the individual family member, entirely independent of the judge and without reference to the judge or to the judge's office.
Canon 7D. Neither Section 7D nor any other section of the Code prohibits a judge in the exercise of administrative functions from engaging in planning and other official activities with members of the executive and legislative branches of government. With respect to a judge's activity on behalf of measures to improve the law, the legal system and the administration of *964 justice, see Commentary to Section 4B and Section 4C and its Commentary.

Application of the Code of Judicial Conduct
This Code applies to justices of the Supreme Court and judges of the District Courts of Appeal, Circuit Courts, and County Courts.
Anyone, whether or not a lawyer, who performs judicial functions, including but not limited to a civil traffic infraction hearing officer magistrate, court commissioner, general or special magistrate special master, general master, domestic relations commissioner, child support hearing officer, or judge of compensation claims, shall, while performing judicial functions, conform with Canons 1, 2A, and 3, and such other provisions of this Code that might reasonably be applicable depending on the nature of the judicial function performed.
Any judge responsible for a person who performs a judicial function should require compliance with the applicable provisions of this Code.
If the hiring or appointing authority for persons who perform a judicial function is not a judge then that authority should adopt the applicable provisions of this Code.

A. Civil Traffic Infraction Hearing Officer Traffic Magistrate

A civil traffic infraction hearing officer traffic magistrate:
(1) is not required to comply with Section 5C(2), 5D(2) and (3), 5E, 5F, and 5G, and Sections 6B and 6C.
(2) should not practice law in the civil or criminal traffic court in any county in which the civil traffic infraction hearing officer magistrate presides.

B. Retired/Senior Judge
A judge who has retired from judicial service and who has complied with the procedures established by the Supreme Court of Florida so as to be eligible for recall to judicial service should comply with all the provisions of this Code except Sections 5C(2), 5E, 5F, and 6A. A retired judge who is subject to recall shall not practice law and shall refrain from accepting any assignment in any cause in which the judge's present financial business dealings, investments, or other extra-judicial activities might be directly or indirectly affected. A retired judge who is subject to recall may serve as a mediator, may place his or her name on the mediator master list maintained by the chief judge, and may be associated with entities that are solely engaged in offering mediation or other alternative dispute resolution services but that are not otherwise engaged in the practice of law. However, such judge may in no other way advertise, solicit business, associate with a law firm, or participate in any other activity that directly or indirectly promotes his or her mediation services. A retired judge assigned to adjudicate a case shall disclose any negotiations or agreements for the provision of mediation services between the judge and any of the parties or counsel to the case. The purpose of these admonitions is to ensure that the judge's impartiality is not subject to question.
If a retired justice or judge does not desire to be assigned to judicial service, such justice or judge who is a member of The Florida Bar may engage in the practice of law and still be entitled to receive retirement compensation. The justice or judge shall then be entitled to all the rights of an attorney-at-law and no longer be subject to this Code.

*965 COMMENTARY
Section A. Please see In re Florida Rules of Practice and Procedure for Traffic CourtsCivil Traffic Infraction Hearing Officer Pilot Program, 559 So.2d 1101 (Fla.1990), regarding civil traffic infraction hearing officers magistrates.
Section B. Although a retired judge subject to recall may act as a mediator or arbitrator, attention must be given to relationships with lawyers and law firms which may require disclosure or disqualification. See Canon 5D(1). This provision is intended to prohibit a senior judge from soliciting lawyers to use his or her mediation services when those lawyers are or may be before the judge in proceedings where the senior judge is acting in a judicial capacity. If a senior judge is rendering mediation services for compensation in civil personal injury matters, he or she should not accept a judicial assignment for that type of case in the same court where the senior judge is mediating those cases. On the other hand, the senior judge could be assigned judicial duties in other jurisdictions of that same court, e.g., criminal, family law, or probate matters, or be assigned as a senior judge in other geographic areas in which the judge does not conduct mediation proceedings.

Effective Date of Compliance
[no change]
NOTES
[1] The American Bar Association's Model Code of Judicial Conduct was adopted by the House of Delegates of the American Bar Association on August 7, 1990, and amended in 1997, 1999, and 2003. Subsequent to the 2003 amendments, which are the amendments at issue here, on September 23, 2003, American Bar Association President Dennis W. Archer, Jr., announced the appointment of a Joint Commission to Evaluate the Model Code of Judicial Conduct. This evaluation is currently ongoing. American Bar Association Center for Professional Responsibility, http://www.abanet. org/judicialethics/home.html
[2] The proposed amendments to the Commentary to Canon 3C(4) and to the "Application" section of the Code modify the terminology of those provisions in response to similar changes made in the Florida Statutes and are unrelated to the 2003 revisions to the ABA Model Code.